Argued December 19, 1934; affirmed January 29, 1935

# PEROZZI *v.* GANIERE
(40 P. (2d) 1009)

*Paul R. Harris,* of Portland (Davis & Harris, of Portland, on the brief), for appellant.

*Robert F. Maguire,* of Portland (Maguire, Shields, & Morrison and Delmas R. Richmond, all of Portland, on the brief), for respondent.

BAILEY, J. On October 24, 1933, in Yamhill county, Oregon, the plaintiff, while riding in an automobile operated by defendant and as the latter's guest, re-

ceived permanent injuries as a result of the car's over-turning, due to the negligent and careless operation of the same by the defendant.

The sole question involved on this appeal is whether or not § 55-1209, Oregon Code 1930, commonly known as the guest statute, is unconstitutional. This section of the code was passed in 1929 [Laws 1929, chapter 401, § 1], and is as follows:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his gross negligence or intoxication or his reckless disregard of the rights of others."

The contention of the plaintiff, appellant herein, is that this section contravenes article I, § 10 of the constitution, which reads as follows: "No court shall be secret, but justice shall be administered openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation." By limiting the recovery of a guest from the owner or operator of a motor vehicle to those instances mentioned in the above section of the code, the plaintiff argues, the guest is deprived of his common-law right of action for injuries due to ordinary carelessness and negligence of the driver, and therefore is deprived of his constitutional right as guaranteed by article I, § 10, that is, a remedy by due course of law for such injuries.

In 1927 the legislature enacted chapter 342 [Laws 1927, chapter 342], denying any right of recovery against the owner or driver of a motor vehicle to any one who while riding as a guest should sustain injuries due to the negligence of the driver of the motor vehicle.

This act was, in the case of *Stewart v. Houk,* 127 Or. 589 (271 P. 998; 272 P. 893, 61 A. L. R. 1236), held to contravene article I, § 10, in that it deprived the guest of any remedy at law for injuries sustained by him through the negligence, whether gross, intentional or otherwise, of the operator of the motor vehicle.

After the original opinion in that case, the supreme court of Connecticut in *Silver v. Silver,* 108 Conn. 371 (143 Atl. 240, 65 A. L. R. 943), upheld the constitutionality of a statute of that state which is almost identical in wording with the 1929 Oregon enactment here under consideration. And in an opinion denying a petition for rehearing in the Stewart case this court referred to the decision in *Silver v. Silver,* supra, pointing out the distinction between the Connecticut act and the Oregon law.

The Connecticut statute on this subject was passed in 1927 [Laws 1927, chapter 308, General Statutes of Connecticut, § 1628] and is in part as follows: "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others." The section of the Connecticut act here quoted also contains a further provision in wording almost identical with that of § 55-1210, Oregon Code 1930, relating to public carriers and owners and operators of motor vehicles used for demonstration purposes.

The case of *Silver v. Silver,* supra, was appealed to the supreme court of the United States and on November 25, 1929, the latter court affirmed the judgment of the supreme court of Connecticut and upheld the stat-

ute there under attack: 280 U. S. 117 (50 S. Ct. 57, 74 L. Ed. 221, 65 A. L. R. 939). In passing directly upon the constitutionality of the enactment the supreme court of the United States said:

"As the record does not disclose the constitutional grounds on which the appellant challenged the validity of the statute, our review will be limited to the single question arising under the federal constitution which was considered in the opinion of the court below. Saltonstall v. Saltonstall, 276 U. S. 260, 72 L. Ed. 565, 48 Sup. Ct. Rep. 225. *We need not, therefore, elaborate the rule that the constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object:*" citing authorities. [Italics ours.]

With reference to the use of the automobile as a subject of permissible legislation, the court observed:

"The use of the automobile as an instrument of transportation is peculiarly the subject of regulation. We can not assume that there are no evils to be corrected or permissible social objects to be gained by the present statute. We are not unaware of the increasing frequency of litigation in which passengers carried gratuitously in automobiles, often casual guests or licensees, have sought the recovery of large sums for injuries alleged to have been due to negligent operation. In some jurisdictions it has been judicially determined that a lower standard of care should be exacted where the carriage in any type of vehicle is gratuitous. See Massaletti v. Fitzroy, 228 Mass. 487, L. R. A. 1918C, 264, 118 N. E. 168, Ann. Cas. 1918B, 1088, 18 N. C. C. A. 690; Marcienowski v. Sanders, 252 Mass. 65, 147 N. E. 275; Epps v. Parrish, 26 Ga. App. 399, 106 S. E. 297. Whether there has been a serious increase in the evils of vexatious litigation in this class of cases, where the carriage is by automobile, is for legislative determination and, if found, may well be the basis of legislative action further restricting the liability. Its wisdom is not the concern of courts."

In the excerpt last above quoted, two of the three cases cited are of special interest here. The Massachusetts precedent of *Massaletti v. Fitzroy,* there mentioned, was decided by the supreme court of Massachusetts in 1917. After an exhaustive review of the subject matter that court there held that the operator of a motor vehicle was liable to a guest for only such injuries as might arise from gross negligence of the operator of the vehicle. The theory of the court seems well expressed in the following excerpt from the opinion, as quoted in the case of *Heiman v. Kloizner,* 139 Wash. 655 (247 P. 1034) :

" 'Where a defendant invites a plaintiff to ride *gratis* in his carriage the question is not a question of the measure of liability of a licensor to a licensee. It is the question of the measure of the liability assumed in case of a gratuitous undertaking. * * * Justice requires that the one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay. There is an inherent difficulty in stating the difference between the measure of duty which is assumed in the two cases. But justice requires that to make out liability in case of a gratuitous undertaking the plaintiff ought to prove a materially greater degree of negligence than he has to prove where the defendant is to be paid for doing the same thing. It is a distinction which seventy-five years' practice in this commonwealth has shown is not too indefinite a one to be drawn by the judge and acted upon by the jury.' "

The rule announced in *Massaletti v. Fitzroy,* supra, has been consistently followed by the supreme court of Massachusetts, although the reasoning therein has been unfavorably criticized by the highest courts of a number of states not having statutes prescribing the duty of the operator of an automobile to an invited guest.

*Epps v. Parrish,* also cited in the above quotation from the opinion in *Silver v. Silver,* 280 U. S. 117 (50 S.

Ct. 57, 74 L. Ed. 221, 65 A. L. R. 939), was decided in 1921. That precedent followed the Massachusetts rule announced in *Massaletti v. Fitzroy,* supra, and the Georgia court based its conclusion that a guest should be permitted to recover only in case of gross negligence on the following reasoning:

"We have reached the conclusion that in order for the invited guest to recover from the owner and operator of an automobile for an injury received by reason of the negligent driving or handling of the machine, there must be facts pleaded that show gross neglect upon the part of the owner and driver of the machine. We have examined cases from other states, and in all cases where there seems to be a holding to the contrary the cases were dependent upon the particular facts there pleaded, such as the driving of the automobile at a reckless rate of speed over the protest of the invited guest, or the racing of the car with other vehicles over his protest."

In July, 1926, the decision in *Heiman v. Kloizner,* supra, was announced. In that decision the court held that the defendant's negligence had not "been shown to be of such high degree as to render him liable in damages" to the plaintiff, "in view of her being in his automobile as his invited guest". In October of the same year the supreme court of the state of Washington in *Saxe v. Terry,* 140 Wash. 503 (250 P. 27), definitely held that an invited guest was entitled to recover for injuries suffered, only in case the same were caused by the gross negligence of the operator of the automobile. The decisions of the three states, Massachusetts, Georgia and Washington, announced what is often referred to as the minority ruling. The conclusion, however, reached in those cases was independent of statutory enactment describing the degree of care to be exercised by operators of automobiles toward invited guests.

Beginning with the year 1927 many of the states enacted laws similar to the Connecticut statute. Those states which have such guest statutes limiting the right of recovery from the owner or operator of an automobile because of injuries received while riding as guest of such owner or driver, to instances arising only from intentional act, intoxication, gross negligence or wanton and wilful misconduct of the operator of the motor vehicle, are the following: California [Deering's General Laws, 1929 Supplement, Act 5128, § 141¾], only in case of intoxication, wilful misconduct or gross negligence, but by statute in 1931 [1931 Statutes and Amendments to the Codes, chapter 812] the liability of the driver was further restricted exclusively to cases in which the accident was caused by his intoxication or wilful misconduct; Colorado [Laws 1931, chapter 118], intoxication or negligence consisting of wilful and wanton disregard of the rights of others; Delaware [Laws of Delaware, Vol. 36, 1929, chapter 270, § 1], all liability of owner or operator removed by statute; Indiana [Burns Ann. Stat., 1929 Supplement, §§ 10142.1 and 10142.2], intentional act or reckless disregard of the rights of others; Iowa [Code 1927, § 5026-61], intoxication or reckless operation; Kansas [Kans. Rev. Stat., 1931 Supplement, § 8-122b], gross and wanton negligence; Kentucky [Baldwin's 1931 Supplement to Carroll's Kentucky Statutes, § 12-7], intentional act on the part of the owner or operator; Michigan [Public Acts 1929, No. 19], gross negligence or wilful and wanton misconduct; Montana [Laws 1931, chapter 195], when the accident is ''caused directly or proximately by the grossly negligent and reckless operation'' of the automobile; Nebraska [Compiled Statutes, 1931 Supplement, chapter 105], intoxication or gross negligence; Ohio [Code of Ohio, Baldwin's Revision, 1934, § 6308-6], wilful or wanton misconduct; South Carolina [Code

1932, § 5908], when the accident is caused by the intentional act of the driver or by his heedlessness or his reckless disregard of the rights of others; Texas [Acts 1931, chapter 225], intentional act of the driver or his heedlessness or reckless disregard of the rights of others; Vermont [Laws 1929, No. 78, page 87], gross or wilful negligence; Washington [Laws 1933, chapter 18], intentional act; Wyoming [Rev. Stat. 1931, § 72-701], gross negligence or wilful and wanton misconduct.

Reference has been made to the numerous enactments of guest statutes for the purpose of showing the trend manifested in the efforts made to alter the duty owing by the operator of a motor vehicle to his invited guest. These statutes also reflect the attitude of legislatures that such enactments are constitutional and fall within the police power of the state.

The language of the Delaware guest statute is: "That the operator or owner of a motor vehicle shall be relieved from any liability whatsoever for injuries suffered or sustained by any person while riding with said operator or in said owner's car free of charge." In *Coleman v. Rhodes,* 35 Del. — [1932] (159 Atl. 649), the supreme court of Delaware held that the legislature could not relieve the operator or owner of an automobile from the consequences of a negligent act that was intentional or wilful. The court further declared that because the unconstitutional part of the act there in question could not be separated from the valid part thereof the whole act was invalid. In the course of the opinion it was said:

"As before stated, this case has been argued on the assumption that the legislature had the right to relieve the owner or operator of a motor vehicle from any liability for injuries to a non-paying passenger caused by ordinary negligence, but not for wilful or gross negligence. For the purposes of this case the defendant con-

cedes the soundness of the proposition, that while the legislature may restrict or modify the liability, it can not extinguish the right entirely. It can not relieve the owner or operator from the consequences of negligence that is intentional or wilful or that is so gross as to amount to a reckless disregard of the rights of others.

* * * * *

"The court may assume, for the purposes of this case, that our statute is, upon its face, unconstitutional because it seeks to do something the legislature was without power to do. But the legislature had power to do a part of that it sought to do. *It could relieve the owner or operator from liability for injury caused by ordinary negligence.*"

The case of *Stewart v. Houk,* supra, is commented upon in the foregoing decision and the opinion on petition for rehearing therein is quoted at length, wherein the 1927 Oregon guest statute relieving the operator of a motor vehicle from all liability was distinguished from the Connecticut statute.

In 1933, after the decision in *Coleman v. Rhodes,* supra, the legislature of Delaware enacted a new guest statute modeled after the Connecticut law. It was subsequent to the Delaware law mentioned in the foregoing list and was not therein noted. Under the 1933 enactment [Laws of Delaware, Vol. 38, chapter 26], the guest was denied recovery except in those instances in which the accident was intentional on the part of the owner or operator of the car or caused by his wilful or wanton disregard of the rights of others. Question as to the constitutionality of this latter act arose in the case of *Hazzard v. Alexander,* Del. [1934] 173 Atl. 517. The court there held that the law was retroactive and denied recovery to the plaintiff on the ground that she did not have any vested right or interest in the mere right of action for damages for the death of her hus-

band, who had been killed while riding as a guest in an automobile.

The Kentucky act above mentioned was in 1932, in *Ludwig v. Johnson,* 243 Ky. 533 (49 S. W. (2d) 347), held unconstitutional on the ground that it violated not less than three sections of the organic law of that state. Section 241 of the Kentucky constitution, which was the first mentioned of the three provisions held to be contravened, reads in part as follows: ''Whenever the death of a person shall result from an injury inflicted by negligence or wilful act, then, in every such case, damages may be recovered for such death, from the corporations and persons so causing the same.''

Section 54 of the Kentucky constitution was the next part of the organic law there mentioned by the court as violated. It provides that: ''The general assembly shall have no power to limit the amount to be recovered for injuries resulting in death, or for injuries to person or property.'' Under the foregoing section, also, the workmen's compensation act of Kentucky was declared invalid, in *Kentucky State Journal Co. v. Workmen's Compensation Board,* 161 Ky. 562 (170 S. W. 437, L. R. A. 1916A, 389, Ann. Cas. 1916B, 1273).

The third constitutional provision referred to by the court in *Ludwig v. Johnson,* supra, is similar to article I, § 10, of our constitution, and in holding that the Kentucky guest law was unconstitutional under that section the case of *Stewart v. Houk,* supra, was cited and quoted at length.

It should be borne in mind that the Kentucky act limited recovery for injuries to instances in which the accident ''resulted from an intentional act on the part'' of the owner or operator of the motor vehicle.

The constitutionality of the Michigan guest act was called into question in the case of *Naudzius v. Lahr,* 253 Mich. 216 (234 N. W. 581, 73 A. L. R. 1189). It was there

contended that the act infringed upon the provision in the Michigan organic law to the effect that "no person shall be * * * deprived of life, liberty or property without due process of law", and the fourteenth amendment to the constitution of the United States, prohibiting denial to any person of the equal protection of the laws. In considering the matters presented the court there remarked: "It would be threshing old straw to discuss the accepted fact that the motor car has presented social, financial and governmental problems which justify the legislatue in reasonably classifying it apart from other vehicles in the enactment of laws." In outlining a reasonable basis for the classification brought about by guest statutes, the opinion further said:

"Generally, gratuitous passengers are relatives or friends. Exceptionally, they are mere acquaintances, invited chance pedestrians, or those who deliberately solicit rides. Since the rule of liability was announced in Roy v. Kirn, 208 Mich. 571, there has been considerable litigation between guests and hosts. Some between husband and wife or other close relatives has found its way to this court. Harvey v. Harvey, 239 Mich. 142; Riser v. Riser, 240 Mich. 402; Farthing v. Hepinstall, 243 Mich. 380. In many, probably most, of the cases between relatives or friends, the real defendant is an insurance company. Ordinary negligence is not hard to prove if guest and host cooperate to that end. It is conceivable that such actions are not always unattended by collusion, perjury, and consequent fraud upon the court. * * * It is not inconceivable that some passengers who solicit rides may manufacture claims for liability. Groups of young folk, engaged upon a joint enterprise of social enjoyment in a borrowed car, have been known to combine to charge the owner for an accident. The law also has social features. It is well known that drivers hesitate to take neighbors for a ride or to assist on his way a weary traveler because of potential liability for in-

juries. Few, if indeed any, of these features seem to have manifested themselves in the use of other vehicles than motor cars. Perhaps the legislature also had other reasons for the law. In view of the abundance of personal injury litigation from the operation of motor cars and the conditions readily conceivable as pertinent to the relation of guest passenger in them, which litigation and conditions seem to be substantially absent from the use of other vehicles, it can not be said that the classification at bar was arbitrary and without reasonable basis.''

In answering the contention that the Michigan act deprived the plaintiff of a right of property without due process of law, the court observed: ''A right of action for a tort to happen in the future is not property, and may be abrogated by the legislature'': citing numerous authorities. The argument that since plaintiff there was a minor she could not relieve the defendant from liability on the ground of contract or agency was refuted by the court's statement that ''the instant act is not based on any theory of contract, agency or waiver. It operates of its own force as an exercise of legislative power''.

In the case at bar, to prove that the Oregon guest statute is unconstitutional the plaintiff relies upon *Mattson v. Astoria,* 39 Or. 577 (65 P. 1066, 87 Am. St. Rep. 687); *Batdorff v. Oregon City,* 53 Or. 402 (100 P. 937, 18 Ann. Cas. 287); *West v. Jaloff,* 113 Or. 184 (232 P. 642, 36 A. L. R. 1391); *Stewart v. Houk,* supra; *Waller v. First Savings & Trust Company,* 103 Fla. 1025 (138 So. 780); and *Hanson v. Krehbiel,* 68 Kans. 670 (75 P. 1041, 64 L. R. A. 790, 104 Am. St. Rep. 422).

The first two cases in this group have reference to the liability of a city for failure to keep in repair its public streets and highways. In *Mattson v. Astoria,* supra, a provision of the city charter exempted the city and members of the council from liability to persons

receiving injuries on account of defective streets. In the opinion it was pointed out that by the city's charter the mayor and common council of Astoria were given control and management of the streets, coupled with authority to raise money for their improvement and repair. After referring to numerous cases holding that when the duty was imposed upon a public officer to do a certain thing and he neglected or refused to do such act he might be compelled to respond in damages to the extent of the injury arising from his conduct, the court came to the conclusion that the provision of the charter attempting to exempt both the city and its officers from liability violated article I, § 10, of our constitution. With reference to such exemptions, the opinion continued:

"A provision, therefore, of the city charter exempting the city from liability for damages resulting from defective streets is not violative of the constitutional provision referred to, because it does not wholly deny the injured party a remedy for the wrong suffered.

"The charter provision in question, however, goes further. It provides that neither the city nor any member of the council shall be liable, and, if valid, prevents a common-law action against the members of the council for their negligent acts or omission, and is practically, therefore, a denial of any remedy, *as they are the only officers charged with the duty of keeping the streets in repair*." [Italics ours.]

The charter provision involved in the case of *Batdorff v. Oregon City,* supra, exempted the municipality from liability for "any loss or injury to person or property growing out of any casualty or accident happening to such person or property on account of the condition of any street or public grounds therein". The provision further stated that no officer of Oregon City or any other person should be exonerated in case of an accident caused by "the wilful neglect of any duty enjoined upon

such officer or person by law, or by the gross negligence or wilful misconduct of such officer or person in any other respect''. This charter provision was consequently held unconstitutional, because it released those specifically charged with a definite duty from liability for failure to perform such duty except in the instances mentioned.

*West v. Jaloff,* supra, involved an Oregon statute granting to certain emergency vehicles the right of way on highways and further providing that ''this act shall not protect the driver of any such vehicle from consequences resulting from the arbitrary exercise of this right or for injuries wilfully inflicted''. It was held that the evidence failed to show that the defendant's ambulance was in the actual service of the city and therefore that it did not come within the rule announced by the authorities cited by the defendant there as sanctioning the exemption of emergency vehicles in the actual service of the city from liability except in certain instances. This court further said that the granting of the right of way to emergency vehicles did not give to defendant the right to exceed the statutory speed limit, and held, therefore, that there was a question to be submitted to the jury as to whether or not the collision resulted from defendant's violating the statute as to the speed of vehicles.

In *Waller v. First Savings & Trust Company,* supra, question arose as to whether or not a cause of action sounding in tort abated upon the death of the tortfeasor. With reference to a part of the constitution of Florida similar to article I, § 10, of the Oregon constitution, the court called attention to the statutory provision declaring the common law of England to be in force in the absence of contrary statutes and expressly excepting ''from such common-law adoption *any rule* of the old English common law which is *inconsistent*

with the constitution and laws of Florida''. It was held that the English common-law rule that such a cause of action died with the tort-feasor was based on the conception that vengeance and not recompense was the object of the action, and that because such purpose does not underlie the American theory of actions for damages the old English common law on that subject should be rejected and the injured party granted redress. In reviewing the subject it is well to note that the court, in pointing out instances in which the common law did not meet conditions obtaining in this country, said:

"For example, under the old English common law cattle were not allowed to roam at large, and, if they did so, and inflicted damage by tresspassing upon a neighbor's property, the owner of such cattle was undeniably liable at English common law for the trespass committed by his cattle when allowed to run at large. But in the early case of Savannah, F. & W. Railway Co. v. Geiger, 21 Fla. 669, 58 Am. Rep. 697, decided in 1886, this court had no hesitancy in declaring that the rule of the English common law relative to liability for cattle trespasses was not suited to the institutions and customs of Florida people, *and therefore did not become a part of the common law of Florida.*"

The case of *Hanson v. Krehbiel,* supra, had to do with a statute of Kansas regarding actions for libel and limiting the right of recovery to actual damages suffered by the plaintiff "in respect to his property, business, trade, profession, or occupation, and no other damages whatsoever" where the publisher of the article after notice made retraction.

It is noteworthy that all the foregoing cases relied upon by the plaintiff, except that of *Waller v. First Savings & Trust Company,* supra, involved a breach of duty owing to the public.

This court in its opinion on the petition for rehearing in *Stewart v. Houk,* supra, directed attention to the

decision of the supreme court of Connecticut in *Silver v. Silver*, supra, and pointed out the fact that under the 1927 Oregon guest statute injured guests were denied access to the courts "regardless of the degree of carelessness exhibited by the injuring act". The opinion then continued as follows:

"Such being the purpose of the act we felt it was in conflict with article I, section 10 of our constitution. The Connecticut constitution contains a similar provision: article I, section 12. No contention, apparently, was advanced in the Connecticut court that the act violated this constitutional guarantee, and the decision makes no mention of that clause. The reason for this silence, no doubt, lies in the fact that since the Connecticut act prescribes a degree of care, which was deemed reasonable, and thus accomplishes an objective, within the police power of the state, article I, section 12, was inapplicable. Such provisions as we pointed out before prohibit the legislature from withholding a remedy where the breach of a well-established duty has injured one who now seeks relief. In our case the act does not endeavor to readjust the duty, but attempts to abolish the remedy; in the Connecticut case the act revised the duty, and afforded redress to all injured through a breach thereof."

The gravamen of plaintiff's contention is that in all instances in which recovery could be had at common law for injuries to person or property such right of recovery has, by article I, § 10, been preserved, and that it is not within the province of the legislature to take it away or in any way limit it. As fortifying her claim of right to recover in this action plaintiff urges that at common law one who is a guest in a vehicle has a right to recover for injuries resulting from ordinary negligence on the part of the owner or other in charge of the vehicle.

Article XVIII, § 7, of the constitution provides: "All laws in force in the territory of Oregon when this

constitution takes effect, and consistent therewith, shall continue in force until altered or repealed.'' By the act of June 27, 1844, the legislative committee of Oregon ·[Laws 1843-49, p. 100] provided in part as follows: ''The common law of England and principles of equity, not modified by the statutes of Iowa or of this government, and not. incompatible with its principles, shall constitute a part of the law of this land.''

With reference to the foregoing provisions, this court, in *Lytle v. Hulen,* 128 Or. 483. (275 P. 45), observed:

''Hence the act of June 27, 1844, and section 7 of article XVIII of the constitution constitute a statutory and constitutional declaration that the common law of England, unless modified by the statutes of Iowa when the act of June 27, 1844, was enacted, or subsequently modified by the statute of Oregon, and not incompatible with the principles of our government, shall constitute a part of the law of Oregon: Peery v. Fletcher, 93 Or. 43, 52 (182 P. 143); In re Water Rights of Hood River, 114 Or. 112, 166 (227 P. 1065).''

■ The right to alter all laws in force in the territory of Oregon when the constitution was adopted, whether the same were of common-law or legislative origin, was reserved to the people of the state by article XVIII, § 7, supra. Indeed, that section of our organic act which adopted the common law of England clearly contemplated future changes in the common law, as evidenced in the condition expressed that the common law should continue in force *''until altered or repealed''.* Moreover, had it been the intention of the framers of the constitution to adopt and preserve the remedy for all injuries to person or property which the common law afforded, they undoubtedly would have signified that intention by exact and specific wording, rather than the language used in article I, § 10.

As indicative of the care taken by the constitutional convention to use definite and unequivocal terms concerning the preservation of certain rights, the prohibition against the passage of *ex post facto* laws or those impairing the obligation of contracts may be cited.

Plaintiff's argument attacking the constitutionality of the guest statute assumes that under the old English common law a guest had a right of recovery for injuries sustained in an accident due to the ordinary negligence of the driver of a vehicle. No authorities to that effect, however, have been called to our attention. Whether or not that assumption be founded on fact, we find that as late as 1869 the Right Honorable Lord Chelmsford in the case of *Moffatt v. Bateman,* XXII Law Times Report (N. S.) 140, in writing for the privy council recommended the reversal of a judgment in favor of a plaintiff who had been injured by the separation of the front wheels "from the hinder wheels" of a carriage in which he was riding as a guest, on the ground that the evidence failed to show gross negligence on the part of the defendant. In discussing this matter, the writer of the opinion there said:

"But that the accident occurred from any negligence which would have renderd the appellant liable is entirely destitute of proof. Their Lordships are very unwilling to interfere with the judgment of the learned judges who decided in this case that there was proof of negligence sufficient to entitle the plaintiff to recover; but they can not help coming to the conclusion that the case ought to have been withdrawn from the jury at the close of the plaintiff's case, on the ground that he had offered no evidence to establish a case of gross negligence against the defendant. Under these circumstances, their Lordships will recommend Her Majesty to reverse the judgment."

See, also, *Massaletti v. Fitzroy,* supra.

The common law is not a fixed and changeless code for the government of human conduct. Its applicability depends to a large extent upon existing conditions and circumstances at any given time. For example, as the complexity of industrial relations has increased, we have seen engrafted on the common law the defenses of the fellow-servant doctrine, contributory negligence and assumption of risk. Due to their harshness as directed against the workman, these common-law defenses have been by legislation abolished in many of the states during the last two decades.

If we were to give to article I, § 10, the construction contended for by plaintiff, we should be obliged to declare unconstitutional much of the legislation of recent years, such, for example, as the workmen's compensation law, which deprives the injured workman of the remedy which he had at common law.

We might mention many instances in which under the common law as administered in England recovery was allowed for injuries suffered, but is denied in this country because of changed conditions. We have already set forth an excerpt from the opinion in *Waller v. First Savings & Trust Company,* supra, wherein the supreme court of Florida held that the old English common law which prohibited cattle from roaming at large and made the owner liable for damages inflicted by their trespassing was not adopted in Florida, due to the fact that it was not applicable to conditions in that state. In parts of Oregon, likewise, the old common law with reference to roaming cattle is not followed, whether by statutory exception or otherwise. If that rule of the common law has been altered by statute in this state, then any constitutional objection urged to such legislation would be as tenable as the objection here raised to our existing guest statute. Again, we

have the rights of a riparian owner as established by frequent adjudication based largely upon statute, which differ widely from the rights of a riparian owner under the common law.

Section 55-1209, Oregon Code 1930, describes the degree of care to be exercised by the operator or owner of an automobile toward one riding therein as his guest. The *quantum* of care designated was considered by the legislature as reasonable under the circumstances.

Prior to the enactment of the guest statutes hereinabove referred to, several of the states had expressly held that the operator or owner of a motor vehicle was not liable for injuries sustained by an invited guest due to only slight or ordinary negligence on the part of such owner or operator. Precedents from those states have been cited and discussed. Other jurisdictions have recognized that the owner or operator was obliged to exercise only that degree of care and caution which would "seem reasonable and proper from the character of the thing undertaken". In *Avery v. Thompson,* 117 Me. 120 (103 Atl. 4, L. R. A. 1918D, 205, Ann. Cas. 1918E, 1122), the court, in commenting upon the opinion in *Massaletti v. Fitzroy,* supra, and views expressed antagonistic thereto, observed:

"Notwithstanding these antagonistic statements as to definition we doubt not that the two courts from a given state of facts would be apt to reach the same conclusion as to liability. The difference is more verbal than real."

After reviewing numerous cases touching upon liability for want of care of the host toward an invited passenger, the opinion further said:

"The foregoing decisions give expression in varying forms to substantially the same fundamental principle and lead to the same essential inquiry, viz.: Did the defendant exercise toward his invited guest that

degree of care and diligence which would seem reasonable and proper from the character of the thing undertaken? The thing undertaken was the transportation of the guest in the defendant's automobile. The act itself involved some danger, because the instrumentality is commonly known to be a machine of tremendous power, high speed, and quick action. All these elements may be supposed to have been within the contemplation of the guest when she accepted the invitation.''

See, also, in this connection, *Cody v. Venzie*, 263 Pa. St. 541 (107 Atl. 383), and *Roy v. Kirn*, 208 Mich. 571 (175 N. W. 475).

Guest statutes have merely placed in statutory form what some courts and the public generally have recognized as just and salutary rules concerning the liability of a host toward an invited passenger in his automobile.

Section 10 of article I of the Oregon constitution is a "due process of law" clause. Many other states have in their organic acts a similar provision. This clause guarantees the enforcement of all recognized rights by due course of law.

■ There was and is no constitutional inhibition against the enactment of our guest statute. It was clearly within the police power of the state for the legislature to attempt to correct what it considered a growing evil. The purpose of such an enactment was well expressed in the case of *Chaplowe v. Powsner*, 119 Conn. 188 [November 8, 1934] (175 Atl. 470), in the following language:

"The purpose and object of the general assembly in adopting chapter 308 of the Public Acts of 1927, which is now section 1628 of the General Statutes, and which denies the right to recover for injuries sustained while one is being transported by the owner or operator of a motor vehicle 'as his guest without payment' of fare unless the accident was intentional or caused by heedlessness or reckless disregard of the rights of others,

has been well stated, concerning a somewhat similar California statute, as follows: 'As the use of automobiles became almost universal, the proverbial ingratitude of the dog that bites the hand that feeds him, found a counterpart in the many cases that arose, where generous drivers, having offered rides to guests, later found themselves defendants in cases that often turned upon close questions of negligence. Undoubtedly, the legislature, in adopting this act, reflected a certain natural feeling as to the injustice of such a situation. Neither this feeling nor the reasons therefor apply to a situation arising out of an ordinary business transaction.' Crawford v. Foster, 110 Cal. App. 81, 87, 293 P. 841, 843. In Russell v. Parlee, 115 Conn. 687, 692, 163 A. 404, 406, we said of our own statute: 'It may well have appeared to the legislature that there were sound social reasons for denying a recovery for negligence against one who was transporting in his automobile a member of his family or a social guest or casual invitee.' See, also, Silver v. Silver, 280 U. S. 117, 122, 50 S. Ct. 57, 74 L. Ed. 221, 65 A. L. R. 939.''

The circuit court committed no error in sustaining the demurrer to the complaint herein, and the judgment appealed from is affirmed.

BEAN, J., not sitting.