Argued October 11, affirmed December 1, 1971

JOSEPHS ET UX, *Appellants, v.* BURNS ET AL, *Defendants,* BEAR ET AL, *Respondents.*

JOSEPHS, INC., *Appellant, v.* BURNS ET AL, *Defendants,* BEAR ET AL, *Respondents.*

491 P2d 203

*Edwin J. Peterson* and *E. Richard Bodyfelt,* Portland, argued the cause for appellants. With them on

the briefs were Arden E. Shenker, and Tooze, Powers, Kerr, Tooze and Peterson, Portland.

*Ridgway K. Foley, Jr.,* Portland, argued the cause for respondents. With him on the brief were Kenneth E. Roberts, and Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, HOWELL, and BRYSON,[*] Justices.

HOLMAN, J.

Plaintiffs, the owners, lessors and lessees of certain buildings, bring these consolidated actions against defendants, architects and engineers, for damages to real and personal property, as well as for the resulting loss of income. The actions are based on the collapse of a roof which allegedly resulted from defendants' negligence in supervision and construction.

The trial court entered judgments for defendants after sustaining demurrers to plaintiffs' complaints upon the basis that the statute of limitations imposed by ORS 12.115(1) had run prior to the commencement of the actions. The statute is as follows:

"(1) In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of."

The services were rendered by defendants in 1951. The roof collapsed on January 1, 1969, approximately seventeen years later. The actions were commenced within two years from the time the roof collapsed. Plaintiffs do not allege that they contracted with de-

---

[*] Bryson, J., did not participate in the decision of this case.

fendants for the construction of the roof or that they owned any interest in the property at the time of the construction. They did have the designated interests in the property at the time of the collapse of the roof.

■■ The plaintiffs contend that the limitation prescribed in the statute did not begin to run until the roof collapsed. They first argue that the words "act or omission complained of" relate to the falling of the roof and that the action was thereafter brought within the statutory period. However, it seems obvious to us that such language refers to the acts of commission or to omissions which are the basis for plaintiffs' claims of defendants' negligence and that the language does not refer to the occurrence of the resulting damage.

■ Plaintiffs also argue that a cause of action did not come into existence until they suffered some damage, and, therefore, the statute could not have been intended to commence to run during a time when there was no cause of action upon which to sue. While defendants contend otherwise, we will assume, without deciding, the plaintiffs had no cause of action until the roof collapsed. When considered in the milieu of this court's opinions and the statute's legislative history, the apparent meaning of ORS 12.115(1) is confirmed, and it becomes clear that the inability of the damaged party to bring an action was not intended to prevent the running of the statutory period.

This court held in *Berry v. Branner,* 245 Or 307, 421 P2d 996 (1966) that the statute of limitations in a medical malpractice case, involving a foreign object left in the body cavity of a surgery patient, did not commence to run until such time as the object was discovered, or, in the exercise of reasonable care, should have been discovered by the patient. The legis-

lature reacted to this decision by enacting Oregon Laws 1967, Chapter 406, Section 1 (ORS 12.110(4))[1], which limited the bringing of a malpractice action to a period within two years from the time the injury was discovered or should have been discovered, and to within an over-all seven-year period from the time of the treatment, omission or operation upon which the action was based.

In addition, it is apparent from the legislative history[2] that the members of the legislature recog-

---

[1] ORS 12.110(4): "An action to recover damages for injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced within two years from the date when the injury is first discovered or in the exercise of reasonable care should have been discovered; provided that such action shall be commenced within seven years from the date of the treatment, omission or operation upon which the action is based."

[2] The legislative history contains a copy of a letter from Attorney John J. Coughlin to Attorney William Morrison under date of January 25, 1967, which includes the following statement:

"The Berry case appears to raise fundamental problems in fields other than medical fields. If the Court is correct regarding its meaning of the word 'accrued,' the same reasoning might very well apply to mistakes of lawyers, engineers, title companies, and others. Thus, if a lawyer makes a mistake in giving an opinion as to the title to real property to the average citizen and the citizen relies upon the opinion and doesn't discover the error of ten years, would not the reasoning in the Berry case apply to litigation based upon an alleged injury to the rights of another under ORS 12.110? * * *."

In the minutes of the Senate Judiciary Committee the following is found:

"Senator Lent commented that representatives of the insurance industry had prepared amendments to Senate Bill 134 and noted that the purpose of the bill had been accomplished by the Supreme Court decision in Berry v. Branner. Senator Yturri remarked that the Supreme Court decision did not fix a maximum time and this bill would stabilize the time so everyone would understand what the statute of limitations was. There was a lengthy discussion concerning the advisa-

nized that the rationale of *Berry* might be equally applicable to a host of other situations in which a defendant's negligence went understandably undetected until after the pertinent statutes of limitation had expired. We believe that this recognition resulted in the inclusion of ORS 12.115(1) in the same 1967 legislative enactment[9] which contained the medical malpractice limitation, and that it was thus intended to provide an over-all maximum upper limit on the time within which a tort action could be brought, regardless of the date of discovery or of any other circumstances.

Plaintiffs seek to show that the contrary was intended by virtue of the fact that an amendment to ORS 12.010[10] was rejected by the Committee on the Judiciary of the House of Representatives. The proposed amendment read as follows:

> "The cause of action shall be deemed to have accrued when the act or omission complained of occurred unless otherwise directed by law."

In *Berry*, we held that the cause of action did not "accrue" until the patient knew or, in the exercise of reasonable care, should have known of the injury

---

bility of a definite cut-off period as opposed to no time limit * * *."

Senator Yturri's remark and the subsequent discussion were in reference to what became ORS 12.110(4). However, the legislative concern was thereby demonstrated relative to the necessity for a statute of ultimate repose and is significant when coupled with the fact that a general statute (ORS 12.115(1)) was added to that relating to malpractice.

[9] Oregon Laws 1967, ch 406, § 2.

[10] ORS 12.010: "Actions at law shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued, except where a different limitation is prescribed by statute * * *."

inflicted upon her. It is clear that the legislative committees which were dealing with the problem of long delayed tort litigation brought about by lack of discovery considered the possibility of defining the time when a cause of action "accrued" as a response to the *Berry* decision. It is our belief that the legislature chose as preferable to the amendment the enactment in one bill of ORS 12.110(4) relating specifically to medical malpractice claims and of ORS 12.115(1) relating generally to other tort claims. ORS 12.115(1) left the discovery rationale of *Berry* intact, should this court subsequently chose to apply the *Berry* rationale to torts other than medical malpractice, but prescribed an ultimate cut-off date in any event for the commencement of tort claims litigation.

We realize that we were considering in *Berry* whether the applicable period of limitation commenced to run from the time the negligence should reasonably have been discovered and that we are considering now whether it should commence to run from the infliction of the damage (in most instances similar to the present case, these two situations would coincide in time). It would be impossible, however, to bring an action in either instance, or so we are assuming for the purpose of this case. Therefore, the simultaneous enactment of ORS 12.110(4), which contained an over-all limit for malpractice cases, and the statute now under consideration would indicate that the time prescribed in the latter statute was intended as an over-all limit regardless of circumstances. It is difficult to attach any other intention to ORS 12.115(1) in view of the fact that there is a two-year statute (ORS 12.110(1)) which is otherwise applicable unless it is concluded that the general tort limitation was intended to be increased to ten years, and no one is so contending.

Plaintiff points out that ORS 12.010 specifies that the limitation statutes in chapter 12 shall only commence to run from the time the cause of action accrues and that the present cause of action could not come into existence before the damage was inflicted. We can answer this argument only by saying that in our opinion ORS 12.115(1) was intended to apply as a ten-year limitation from the date of the act or omission regardless of when the damage resulted or when the act or omission was discovered.

4. Plaintiffs also contend that our construction of ORS 12.115(1) is not tenable because Oregon Laws 1971, ch 664, enacted a specific statute of limitations applicable to contractors, architects and engineers which provided that an action similar to the one in question must be brought within two years from the time of the infliction of the damage but that, in any event, it must be brought within ten years from the completion of the work claimed to have been defective. Plaintiffs argue that the legislature would not have done a useless act and that the passage of the bill would have been useless if our construction of ORS 12.115(1) is correct. We are not impressed with such a contention. It is general knowledge that enactments such as we are dealing with here do not just spontaneously occur but are proposed to the legislature by affected groups. It would not have been logical for the groups affected by the 1971 enactment to stand by and take a chance on the construction which this court would give ORS 12.115(1) when the matter could be foreclosed for the future by legislative enactment.

Plaintiffs also contend that ORS 12.115(1) is tolled during the time when plaintiffs could not have reasonably discovered the defects complained of.

We believe that this contention is foreclosed by the obvious legislative response to *Berry* by the enactment of ORS 12.115(1) and 12.110(4), described previously. Also, the words, *"In no event* shall any action * * * be commenced more than 10 years * * *"* (emphasis ours), used in ORS 12.115(1), indicate plainly that the limitation was to be effective regardless of circumstances.

5. Plaintiffs next contend that defendants had a duty to warn of the defects and to take remedial action to fix them, which duty continued up until the time the roof collapsed. They allege in their complaints that defendants failed 1) to warn them of the hazards and 2) to repair or strengthen the faulty roof supports. They argue that such negligent failure was in existence up to the time the roof collapsed and that, therefore, the action was brought within the statutory period. Plaintiffs rely on *Comstock v. General Motors Corp.,* 358 Mich 163, 99 NW2d 627, 78 ALR2d 449 (1959), a case wherein an automobile manufacturer became aware that the brakes on a certain model automobile were defective, but who did not inform the plaintiff, the purchaser of such a vehicle. They also rely on *Handler v. Remington Arms Co.,* 144 Conn 316, 130 A2d 793 (1957), in which plaintiff was injured as the result of a defective revolver cartridge.

If our interpretation of the meaning of the language of ORS 12.115(1) and of the legislative intent in enacting it is correct, plaintiffs' cited cases are of no avail. If the statute was intended to be one of ultimate repose, regardless of circumstances, it would follow that the legislature did not intend the statute to be circumvented by allegations that subsequent to the fundamental wrong, a continuing duty existed to rec-

tify the results of such wrong. By this statement we do not intend to prejudge a situation in which an active, continuous relationship between plaintiff and defendant exists from the time of the negligent acts to a time within the period during which an action is permitted.

For cases which have not permitted plaintiffs similar circumvention of a statute of limitations and which are contrary to the rationale of those cases cited by plaintiff, *see: Teitelbaum v. Borders,* 206 Cal App 2d 634, 637, 23 Cal Rptr 868 (1962) ; *Schwartz v. Heyden Chem. Corp.,* 12 NY2d 212, 188 NE2d 142, 143-44, 237 NYS2d 714, 4 ALR3d 814 (1963) ; *Nurick v. Baker,* 14 NYS2d 503, 506 (1939) ; *Squire v. Guardian Trust Co.,* 79 Ohio App 371, 72 NE2d 137, 147-49 (1947). The only Oregon case which has come to our attention as being of somewhat similar import is *Industrial Plating Co. v. North,* 175 Or 351, 356, 153 P2d 835, 156 ALR 250 (1944). In that case, the defendant, Constable of Multnomah County, wrongfully took into custody property in the possession of plaintiff. In an effort to avoid the effects of the statute of limitations, plaintiff contended, in an action for damages resulting from such seizure, that defendant's possession was a continuing tort. We held the tort was complete upon the seizure, despite the fact that damages continued to accrue.

■ Lastly, plaintiffs contend that a statute which purports to extinguish a remedy before the legally protected right becomes actionable is unconstitutional because it contravenes Article I, Section 10, of the Oregon Constitution, which provides that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

Assuming that the effect of ORS 12.115(1) is to abolish causes of action in tort where the damage does not result within ten years after the negligent acts or omissions complained of, we see nothing unconstitutional in so doing. In *Noonan v. City of Portland,* 161 Or 213, 249, 88 P2d 808 (1939), we stated that Article I, Section 10, did not inhibit the legislature from altering common law rights against municipalities, and said:

> "* * * In *Silver v. Silver,* 280 U.S. 117, * * *, the court said that it was unnecessary to 'elaborate the rule that the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object.' We held to similar effect in sustaining the validity of a statute which was attacked under Art. I, § 10, Oregon Constitution: *Perozzi v. Ganiere,* 149 Or 330, 40 P.(2d) 1009. Article I, § 10, Oregon Constitution, was not intended to give anyone a vested right in the law either statutory or common; nor was it intended to render the law static * * *."

It has always been considered a proper function of legislatures to limit the availability of causes of action by the use of statutes of limitation so long as it is done for the purpose of protecting a recognized public interest. It is in the interest of the public that there be a definite end to the possibility of future litigation resulting from past actions. It is a permissible constitutional legislative function to balance the possibility of outlawing legitimate claims against the public need that at some definite time there be an end to potential litigation.

The judgment of the trial court is affirmed.