Submitted on remand from the Oregon Supreme Court September 6, 2016, argued on remand March 13; affirmed on appeal, cross-appeal dismissed as moot April 26; petition for review denied October 5, 2017 (362 Or 38)

Ronda LUNSFORD,
Personal Representative of the Estate of
Rodney Gale Lunsford, Deceased,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

NCH CORPORATION,
dba Certified Labs, and dba Chemsearch;
Aervoe Industries, Inc.,
fdba Zynolyte Products, Co., Inc.;
Rust-Oleum Corporation;
The Sherwin-Williams Company,
dba Dupli-Color Products, Co.,
and fdba Dupli-Color Products, Co.;
Dupli-Color Products, Co.;
and Rodda Paint, Co.,
*Defendants,*
*and*

DYNACCO, INC.,
*Defendant-Respondent*
*Cross-Appellant.*

DYNACCO, INC.,
*Third-Party Plaintiff,*

*v.*

RUDD COMPANY, INC.,
*Third-Party Defendant.*

Multnomah County Circuit Court
110912644; A154902

396 P3d 288

J. Randolph Pickett, argued the cause for appellant-cross-respondent. With him on the briefs were R. Brendan Dummigan, Kristen W. McCall, Kimberly O. Weingart, and Pickett Dummigan LLP. With him on the supplemental brief on remand were R. Brendan Dummigan, Kimberly O. Weingart, Ron K. Cheng, and Pickett Dummigan LLP.

Leslie A. Kocher-Moar argued the cause for respondent-cross-appellant. With her on the briefs were Robert D. Scholz, Megan L. Ferris, Chris L. Wyrostek, and MacMillan, Scholz & Marks, P. C. With her on the supplemental brief on remand were Robert D. Scholz, Megan L. Ferris, and MacMillan, Scholz & Marks, P. C.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge pro tempore.

### FLYNN, J. pro tempore

This appeal returns to us on remand from the Oregon Supreme Court. In our earlier opinion, we applied Oregon Supreme Court precedent and held that the statute of ultimate repose for product liability claims, ORS 30.905(3)(b) (2008), does not violate either the remedy clause of Article I, section 10, of the Oregon Constitution, or the jury trial clause of Article I, section 17, of the Oregon Constitution. *Lunsford v. NCH Corp.*, 271 Or App 564, 566, 351 P3d 804 (2015), *decision vac'd*, 360 Or 235, 381 P3d 824 (2016) (*Lunsford I*). The Supreme Court vacated and remanded our decision for reconsideration in light of that court's opinion in *Horton v. OHSU*, 359 Or 168, 376 P3d 998 (2016), which overruled one of the remedy clause cases on which our first decision relied.

On remand, we again conclude that plaintiff's challenge under the remedy clause is foreclosed by a controlling Supreme Court opinion. In the wake of *Horton,* we now arrive at the same result by following *Sealey v. Hicks,* 309 Or 387, 396, 788 P2d 435 (1990), in which the Supreme Court rejected an Article I, section 10, challenge to the statute of ultimate repose under a remedy clause paradigm that—although previously disavowed by the Supreme Court—has now been restored by *Horton.* We reject plaintiff's argument that we can distinguish or disregard *Sealey.* We also adhere to our prior conclusion that *Sealey* requires us to reject plaintiff's Article I, section 17, challenge. Accordingly, we affirm.[1]

As set out in *Lunsford I*, plaintiff filed a wrongful death product liability action alleging that decedent died in 2008 as a consequence of a form of leukemia caused by long-term exposure to unreasonably dangerous benzene-containing products, including a product manufactured by defendant. Defendant argued that plaintiff's claim against defendant is barred by the products liability statute of ultimate repose, ORS 30.905(1) (2008), which provides that

---

[1] As we explained in *Lunsford I*, defendant filed a protective cross-appeal raising identical issues as, essentially alternative bases for affirmance. We dismissed the cross-appeal as moot because our decision to affirm on the appeal obviated any need to consider the protective cross-appeal. 271 Or App at 572 n 4. We adhere to that conclusion on remand.

"a product liability civil action may not be brought for any death, personal injury or property damage that is caused by a product and that occurs more than eight years after the date on which the product was first purchased for use or consumption."[2] The trial court agreed with defendant and dismissed the action.

In *Lunsford I*, we rejected plaintiff's arguments that the limitation in ORS 30.905 (2008) violates Article I, section 10, and Article I, section 17, of the Oregon Constitution. We began by observing that "[t]he Supreme Court has previously upheld the statute of repose found in ORS 30.905 against challenges under the same constitutional provisions," referring to that court's decision in *Sealey*. 271 Or App at 567. But we agreed with plaintiff that *Sealey* was "no longer controlling precedent with respect to whether ORS 30.905(3)(b) (2008) violates the remedy clause," because the Supreme Court in *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001), had expressly disavowed *Sealey's* understanding of the role of the remedy clause. 271 Or App at 568.

After agreeing that *Sealey* was no longer a controlling precedent regarding plaintiff's remedy clause argument, we then analyzed plaintiff's argument in light of the rule set out in *Smothers*—that the remedy clause applies if the "plaintiff's particular alleged injury is one for which the common law recognized a cause of action" in 1857. 271 Or App at 568-69. We concluded that "under the *Smothers* framework, wrongful death actions would not be protected by the remedy clause," because "the Supreme Court has repeatedly described actions for wrongful death as not among those recognized by the common law in 1857." *Id.* at 569 (citing *Storm v. McClung*, 334 Or 210, 222 n 4, 47 P3d 476 (2002), and *Kilminster v. Day Management Corp.*, 323 Or 618, 627, 919 P2d 474 (1996)).

We declined plaintiff's invitation to intuit that the Supreme Court no longer agreed with *Smothers'* conclusion

---

[2] The legislature amended ORS 30.905 in 2009 to provide, among other changes, that the ultimate repose period is extended for products manufactured in or imported into a state with a longer period of repose, but those changes apply only to claims arising after January 1, 2010. Or Laws 2009, ch 485, §§ 1-2.

that the remedy clause protects only causes of action that existed at common law in 1857. We declined that invitation, because we "'remain bound by Supreme Court precedent until such time as that court reconsiders and disavows it.'" 271 Or App at 571 (quoting *State v. Turner*, 235 Or App 462, 466, 234 P3d 993 (2010)).

Plaintiff correctly read the tea leaves, however, and in *Horton*, the Supreme Court expressly reconsidered and overruled *Smothers*. In doing so, the Supreme Court in *Horton* severed Article I, section 10, jurisprudence from the state of the common law in 1857 and restored its earlier Article I, section 10, jurisprudence, which *Smothers* had disavowed. 359 Or at 218-19 (explaining that, because "the common law is not inflexible but changes to meet the changing needs of the state[,] * * * *Smothers* clearly erred in holding that the remedy clause locks courts and the legislature into a static conception of the common law as it existed in 1857"). Thus, plaintiff's challenge under Article I, section 10, is no longer answered by the cases in which the Supreme Court has described wrongful death actions as not recognized by the common law in 1857.

Plaintiff urges us to analyze her remedy clause challenge as an open question, to be answered under the analytical framework described in *Horton*. However, in the process of opening one door—by overruling *Smothers*— *Horton* closed another—by restoring *Sealey*'s status as controlling precedent regarding Article I, section 10. *Sealey* holds that the statute of ultimate repose does not violate the remedy clause, because "'[i]t is a permissible constitutional legislative function to balance the possibility of outlawing legitimate claims against the public need that at some definite time there be an end to potential litigation.'" 309 Or at 394 (quoting *Josephs v. Burns & Bear*, 260 Or 493, 502, 491 P2d 203 (1971)).[3] We did not apply *Sealey* in our first opinion, because *Smothers* disavowed *Sealey* on the grounds that *Sealey* relied on the remedy clause analysis of *Perozzi*

---

[3] *Josephs* upheld a statute of ultimate repose that applies to actions for negligent injury to person or property, ORS 12.115. The court in *Sealey* emphasized that, prior to the adoption of ORS 30.905, the court had held that products liability civil actions were subject to the negligence statute of ultimate repose. 309 Or at 394 n 8.

*v. Ganiere*, 149 Or 330, 348, 40 P2d 1009 (1935), and the *Smothers* court concluded that *Perozzi* had strayed from the remedy clause's historical purpose. *Smothers*, 332 Or at 118-19.

*Horton* upended that result, however, by expressly "disagree[ing] with *Smothers* that we either can or should disregard *Perozzi* and the cases that followed it." 359 Or at 197. As *Horton* explains, "the cases relying on *Perozzi* were not sipping from a poisoned wellspring. Rather, they were relying on a case that took a considered view of the text, context, and purposes of Oregon's remedy clause." *Id.* at 196. Accordingly, the court "reaffirm[ed]" its "remedy clause decisions that preceded *Smothers,* including the cases that *Smothers* disavowed." *Id.* at 218. The court specifically offered *Sealey* as an example of one of those post-*Perozzi* cases that *Smothers* incorrectly disavowed. *Id.* at 196 n 15.

Nevertheless, plaintiff offers two reasons that we should decline to follow *Sealey.* First, she argues that *Sealey* does not survive *Horton*'s approach to the remedy clause. Second, she argues that *Sealey* does not address the unique remedy clause challenge that is presented by claims for slow-manifesting injury from exposure to a toxic product. Neither argument convinces us that we are free to reach a different conclusion regarding the remedy clause than the conclusion that the Supreme Court reached in *Sealey.*

Plaintiff's argument that *Sealey* has not survived *Horton* relies on her understanding that *Horton* construed the remedy clause as imposing substantive limits on the legislature. *See Rains v. Stayton Builders Mart, Inc.*, 359 Or 610, 639 n 10, 375 P3d 490 (2016) (explaining, "[i]n *Horton,* this court further held that Article I, section 10, of the Oregon Constitution, substantively ensures a remedy for persons injured in their person, property, or reputation" (citing 359 Or at 218-21)). That view that the remedy clause imposes substantive limits on the legislature is contrary to what plaintiff understands to be *Sealey*'s construction of the remedy clause. Plaintiff urges us to treat the Supreme Court's remand instructions—a remand "to the Court of Appeals for reconsideration in light of *Horton*"—as an invitation for us to determine whether *Sealey* survives *Horton*'s

construction of the remedy clause. We do not share plaintiff's view of the remand order, because *Horton* did not disavow *Sealey*. Indeed, *Horton* expressly identifies *Sealey* as one of the post-*Perozzi* cases that is no longer disavowed. As we reiterated in our opinion in *Lunsford I*, "'we remain bound by Supreme Court precedent until such time as that court reconsiders and disavows it.'" 271 Or App at 571 (quoting *Turner*, 235 Or App at 466). Plaintiff's argument that *Sealey* should be reconsidered and disavowed is an argument for the Supreme Court.

For the same reason, we decline to consider plaintiff's argument that *Sealey* does not resolve the kind of remedy clause challenge that plaintiff brings. According to plaintiff, the nature of the defect in defendant's product is such that it causes a harm that will never manifest itself within the time limit of the statute of repose: a latent disease that can be traced back to "structural breakdown" in the body.[4] This means, plaintiff argues, that the statute of ultimate repose effectively eliminates all liability for manufacturing or selling a product with that kind of defect. According to plaintiff, that result meaningfully distinguishes her cause of action from actions for the kind of defect at issue in *Sealey*—an SUV prone to rolling over—because *Sealey* emphasizes that the statute of ultimate repose represented a legislative balancing of "the possibility of outlawing legitimate claims" for some people who will be injured by the defect against the interests of providing a definite time at which there will be "an end to potential litigation." *See Sealey*, 309 Or at 394 (quoting *Josephs*, 260 Or at 502). Plaintiff argues that the "balance" rationale does not apply when the harm from the product defect is inherently too slow to manifest as symptoms for which a claim can be made.

Whatever merit there may be to plaintiff's argument for distinguishing *Sealey*, it is not a basis on which we can deviate from *Sealey*. While *Sealey* did not address the argument that plaintiff raises, the court's holding is broad:

---

[4] This case does not present the question of whether the "structural breakdown" that plaintiff identifies constitutes the kind of harm for which a cause of action could have been brought at an earlier date, if discovered before the statute of ultimate repose expired.

"Plaintiff is particularly aggrieved because the statute of repose eliminates his remedy even before he has suffered an injury. This is true. ORS 30.905(1) does bar plaintiff's claim and deny him a remedy for what would otherwise be a legally cognizable injury. However, ORS 30.905(1) is nonetheless constitutional."

309 Or at 393. That holding, which once again represents controlling precedent, leaves no room for us to reach a different conclusion. *See Turner*, 235 Or App at 466.

With respect to plaintiff's Article I, section 17, challenge, we reaffirm our analysis in *Lunsford I*, with one modification. In *Lunsford I*, we relied on *Sealey* for the proposition that ORS 30.905 does not violate Article I, section 17, because the jury trial analysis of *Sealey* has never been disavowed. 271 Or App at 571. We explained that, as described in *Sealey*, the jury trial right in Article I, section 17, "'guarantee[s] a jury trial when a right to a trial exists in a civil action. It is not an independent guarantee of the existence of a cognizable claim.'" *Id.* (quoting *Sealey*, 309 Or at 396). Nothing in *Horton* calls into question *Sealey*'s analysis of the function of Article I, section 17. Indeed, *Horton* reiterates the court's construction of Article I, section 17, as guaranteeing a procedural right to a jury trial in civil actions without imposing a substantive limit on the legislature's authority. 359 Or at 243.

However, in describing the general scope of Article I, section 17, we cited *Lakin v. Senco Products, Inc.*, 329 Or 62, 82, 987 P2d 463 (1999), for the proposition that "Article I, section 17, guarantees a jury trial in civil actions for which the common law provided a jury trial when the Oregon Constitution was adopted in 1857 and in cases of like nature." We no longer rely on *Lakin* for that proposition, because, as plaintiff acknowledges, *Lakin* is another case that *Horton* overrules. The court in *Horton* described Article I, section 17, as a provision that "guarantees the right to a trial by a jury (as opposed to a trial by a judge) in civil actions for which the common law provided a jury trial when the Oregon Constitution was adopted in 1857 and in cases of like nature." 359 Or at 243. That slight rephrasing of the jury trial guarantee does not alter our conclusion that

*Sealey*—and now *Horton*—forecloses plaintiff's Article I, section 17, challenge and is precedent to which we must adhere.

Affirmed on appeal; cross-appeal dismissed as moot.