Argued and submitted June 23, reversed in part; otherwise affirmed
October 15, 2003

Elisa LAWSON,
*Respondent,*

*v.*

Spencer HOKE,
*Appellant.*

0101-00766; A117388

77 P3d 1160

Janet M. Schroer argued the cause for appellant. With her on the briefs were Marjorie A. Speirs and Hoffman, Hart & Wagner, LLP.

Willard Merkel argued the cause for respondent. With him on the brief was Merkel & Associates.

Richard E. Oberdorfer, S. Patricia Oberdorfer, and Oberdorfer Law Firm LLC filed the brief *amicus curiae* for Oregon Trial Lawyers Association.

Benjamin M. Bloom and Hornecker, Cowling, Hassen & Heysell, L.L.P. filed the brief *amicus curiae* for Oregon Association of Defense Counsel.

Lisa E. Lear, Jeffrey S. Eden, John R. Bachofner, and Bullivant Houser Bailey PC filed the brief *amici curiae* for Allstate Insurance Company, Oregon Mutual Insurance Company, and State Farm Insurance Company.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

BREWER, J.

### BREWER, J.

■ Defendant appeals a judgment awarding plaintiff noneconomic damages in a negligence action arising from an automobile accident. In his answer to plaintiff's complaint, and again in a motion for summary judgment, defendant asserted that, because plaintiff did not have liability insurance at the time of the accident, ORS 18.592(1) barred her from recovering noneconomic damages.[1] The trial court ruled that ORS 18.592(1) violates plaintiff's right to a remedy under Article I, section 10, of the Oregon Constitution and interferes with her right to a jury trial under Article I, section 17. The parties then waived a jury trial, and the trial court found defendant negligent and awarded plaintiff noneconomic damages.[2] We review for errors of law, *Trabosh v. Washington County*, 140 Or App 159, 915 P2d 1011 (1996), and reverse the award of noneconomic damages.

Plaintiff was injured when defendant drove through a stop sign at an intersection and collided with plaintiff's car. Plaintiff brought this action against defendant for negligence, seeking economic and noneconomic damages. Defendant asserted as an affirmative defense that ORS 18.592(1) barred plaintiff from recovering noneconomic damages. Plaintiff conceded that she did not have insurance at the time of the accident. Nevertheless, plaintiff filed a motion under ORCP 21 E to strike defendant's affirmative defense, arguing that ORS 18.592(1) violates Article I, sections 10 and 17, by depriving her of the right to recover noneconomic damages

---

[1] ORS 18.592(1) provides:

"Except as provided in this section, a plaintiff may not recover noneconomic damages, as defined in ORS 18.560, in any action for injury or death arising out of the operation of a motor vehicle if the plaintiff was in violation of ORS 806.010 [prohibiting driving while uninsured] or ORS 813.010 [prohibiting driving while intoxicated] at the time the act or omission causing the death or injury occurred. A claim for noneconomic damages shall not be considered by the jury if the jury determines that the limitation on liability established by this section applies to the claim for noneconomic damages."

[2] Although plaintiff waived her right to a jury trial, she contends that Article I, section 17, remains relevant to her argument that, by enacting ORS 18.592(1), the legislature interfered with the judicial factfinding process. Article I, section 17, prohibits such interference, whether the court or a jury sits as finder of fact. *Lakin v. Senco Products, Inc.*, 329 Or 62, 82, 987 P2d 463, *clarified on recons*, 329 Or 369, 987 P2d 476 (1999).

and to have that issue tried to a jury. Before the trial court ruled on plaintiff's motion, defendant filed a motion for partial summary judgment on the ground that ORS 18.592(1) barred plaintiff's recovery of noneconomic damages. In a combined order, the court granted plaintiff's motion to strike defendant's affirmative defense and denied defendant's motion for summary judgment. The parties then settled plaintiff's claim for economic damages for $4,210 and, following a bench trial in which defendant conceded his negligence, the court awarded plaintiff $5,790 in noneconomic damages based upon the parties' agreement that that amount was a reasonable sum to be awarded. This appeal followed.

Defendant makes three related assignments of error. He argues that the trial court erred in granting plaintiff's motion to strike his affirmative defense, in denying his motion for partial summary judgment, and in awarding noneconomic damages to plaintiff. In a combined argument, defendant contends that ORS 18.592(1) survives both of plaintiff's constitutional challenges.

We begin with defendant's argument that ORS 18.592(1) does not violate the remedy clause of Article I, section 10, which provides that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation." The Supreme Court recently has summarized the analytical methodology applicable to a challenge to legislation under Article I, section 10:

"In *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 124, 23 P3d 333 (2001), this court examined in detail the origin and meaning of the remedy clause, and held that, because Article I, section 10, guarantees a remedy for any injury to absolute common-law rights respecting person, property, or reputation, the legislature does not have the authority to deny a remedy for such injuries. The conclusions about the remedy clause outlined in *Smothers* define the inquiry necessary to determine whether legislative action violates that constitutional guarantee. *See Jensen v. Whitlow*, 334 Or 412, 417-18, 51 P3d 599 (2002) (so stating). In accordance with the analytical approach of *Smothers*, our first step, ordinarily, is to determine whether the injury that plaintiffs have alleged is one for which the remedy clause guarantees a remedy. *Smothers*, 332 Or at 124. If so, then the

next question is whether the legislation at issue * * * abolished that remedy without providing a constitutionally adequate substitute. *Id.*"

*DeMendoza v. Huffman*, 334 Or 425, 433-34, 51 P3d 1232 (2002).

Plaintiff asserts that the remedy clause guarantees a remedy for her injury and that ORS 18.592(1) abolished that remedy. Defendant advances several rationales in defense of the statute. First, he contends that plaintiff's injury is not protected by the remedy clause, because no remedy was available for such an injury in 1857, when the Oregon Constitution was adopted. Defendant reasons that, because automobiles did not exist in 1857, there was at that time no recognized remedy for injuries resulting from the negligent operation of automobiles. It follows, according to defendant, that the legislature may limit the remedies available in such cases. Alternatively, defendant argues that ORS 18.592(1) does not violate the remedy clause because the legislature did not *abolish* plaintiff's remedy. Rather, defendant asserts, the statutory insurance requirement is merely a *condition precedent* to the right to recover noneconomic damages. Finally, defendant argues that, even if ORS 18.592(1) abolished a remedy within the meaning of Article I, section 10, the remedy that remains is constitutionally adequate.

Plaintiff responds that, even though automobiles did not exist in 1857, negligence was then recognized as a cause of action, and noneconomic damages were an available remedy for negligence. According to plaintiff, the nature of the particular instrumentality with which defendant negligently caused her injuries is irrelevant for purposes of the present inquiry. Plaintiff also argues that ORS 18.592(1) does not establish a permissible condition precedent to the recovery of noneconomic damages because, under Article I, section 10, the legislature may attach conditions precedent to the enjoyment of a remedy only if the conditions may be fulfilled after the right of recovery arises. Finally, plaintiff remonstrates that economic damages alone are not a constitutionally adequate residual remedy for her legal injury.

We begin our analysis with the question whether the remedy clause guarantees a remedy for plaintiff's injury. For

purposes of Article I, section 10, "injury" means "a wrong or harm for which a cause of action existed when the drafters wrote the Oregon Constitution in 1857." *Smothers*, 332 Or at 124. A common-law cause of action for negligence generally existed at that time. *Id.* at 129. However, Article I, section 10, preserves a remedy only where "the common law of Oregon would have recognized an action for negligence *under the circumstances of [the] case.*" *Id.* at 128 (emphasis added). Thus, defendant argues, we must focus specifically on the type of negligence claim that plaintiff asserts.

The Supreme Court has never stated how closely a cause of action must resemble one that existed in 1857 in order to be sheltered by Article I, section 10. However, the court's decisions in other contexts are instructive. In *Lakin v. Senco Products, Inc.*, 329 Or 62, 82, 987 P2d 463, *clarified on recons*, 329 Or 369, 987 P2d 476 (1999), the court held that "Article I, section 17, guarantees a jury trial in civil actions for which the common law provided a jury trial when the Oregon Constitution was adopted in 1857 *and in cases of like nature.*" (Emphasis added.) *See also State v. 1920 Studebaker Touring Car et al.*, 120 Or 254, 263, 251 P 701 (1926) ("[T]he constitutional right of trial by jury is not to be narrowly construed, and is not limited strictly to those cases in which it had existed before the adoption of the Constitution, but is to be extended to cases of like nature as they may hereafter arise.").

Similarly, in the context of crimes involving speech, the court has held that Article I, section 8, does not shield the "use of words in the course of what indisputably would have been a conventional crime when Oregon's Bill of Rights was adopted * * *." *State v. Robertson*, 293 Or 402, 433, 649 P2d 569 (1982). The court held:

> "The legislature, of course, may revise these crimes and extend their principles to contemporary circumstances or sensibilities. If it was unlawful to defraud people by crude face-to-face lies, for instance, free speech allows the legislature some leeway to extend the fraud principle to sophisticated lies communicated by contemporary means. Constitutional interpretation of broad clauses locks neither the powers of lawmakers nor the guarantees of civil liberties

into their exact historic forms in the 18th and 19th centuries, as long as the extension remains true to the initial principle."

*Id.* at 433-34.

■ ■ Article I, section 8, and Article I, section 17—like Article I, section 10—are original constitutional guarantees contained in the Oregon Bill of Rights. There is no reason to believe that the remedy clause does not, in like manner, safeguard "extensions" that remain true to its "initial principle." We conclude that that is the case here. Article I, section 10, protects claims for negligence that are equivalent in substance—though modern in form—to those that existed at common law in 1857.

The common law recognized negligence actions involving horse-drawn wagons. *See, e.g., Ford v. Umatilla County*, 15 Or 313, 16 P 33 (1887); *Black v. The Carrollton Railroad Company*, 10 La Ann 33 (1855), *overruled in part on other grounds by Lejeune v. Rayne Branch Hosp.*, 556 So2d 559 (La 1990); *Lovejoy v. Dolan*, 64 Mass (10 Cush) 495 (1852); *Brooks v. Hart*, 14 NH 307 (1843). Defendant argues, however, that the analogy between horse-drawn wagons and the modern automobile fails because neither wagons nor their drivers were subject to the sort of licensing and regulation requirements to which their modern counterparts are. We disagree.

In *Stewart v. Houk et al.*, 127 Or 589, 271 P 998, *on reh'g*, 272 P 893 (1928), the Supreme Court invalidated chapter 342 of the 1927 Session Laws, which abolished the liability of motor vehicle drivers for accidental injuries to guest passengers. In concluding that the statute violated Article I, section 10, it stated:

"[I]f prior to the enactment of the Constitution a host, who transported without charge a guest, owed to the latter a duty to exercise care, and if the law recognized that a breach of that duty with a resultant injury afforded the guest a cause of action, this jural right the Constitution preserved against legislative abolishment."

*Id.* at 595. The court concluded that a host's duty of care to a guest was well established. *Id.* Notably, the court's analysis was not affected by the fact that the parties' relationship involved an automobile. After a rehearing en banc, the court acknowledged that "the police power of the state is broad enough to include the regulation of automobiles driven upon the public highways," *id.* at 598, but it was not persuaded to alter its decision; it reaffirmed that section 10 "prohibit[s] the legislature from withholding a remedy where the breach of a well-established duty has injured one who now seeks relief." *Id.* In other words, the state's power to license and regulate drivers and motor vehicles remains subordinate to the remedy clause. Having fully addressed defendant's arguments to the contrary, we conclude that Article I, section 10, guarantees a remedy for plaintiff's injury.

We turn to the issue whether the legislature has abolished the remedy for plaintiff's injury. We begin with defendant's contention that, rather than abolishing plaintiff's remedy, ORS 18.592(1) merely imposes a condition precedent to her right to recover noneconomic damages. Defendant relies on the court's statement in *Smothers* that it has "never held that the remedy clause prohibits the legislature from * * * attaching conditions precedent to invoking [a] remedy * * *." 332 Or at 119 (paraphrasing *Mattson v. Astoria*, 39 Or 577, 580, 65 P 1066 (1901)). Plaintiff responds that, by requiring her to prove that she had liability insurance at the time of the accident, ORS 18.592(1) does not create a condition precedent but, instead, adds a new element to her cause of action. Plaintiff contends that ORS 18.592(1) abolishes the common-law cause of action for noneconomic damages because "there is nothing a claimant can do, once her damages arise, to obtain any remedy if, at the moment her damages arose, she was guilty of [driving without insurance]."

Defendant replies that we upheld a similar statutory condition to bringing a claim in *Roelle v. Griffin*, 59 Or App 434, 651 P2d 147 (1982). In *Roelle*, the plaintiffs were builders who had contracted to perform services and furnish materials for an improvement to the defendants' home. *Id.* at 436. After a dispute arose, the plaintiffs brought an action for breach of contract. *Id.* The defendants alleged in response

that, because the plaintiffs were not registered contractors, they were barred under ORS 701.065 (1979) from bringing the action.[3] *Roelle*, 59 Or App at 436. The plaintiff argued that that statute deprived it of a remedy in violation of Article I, section 10. We rejected that argument, holding that Article I, section 10, did not prohibit the legislature from barring claims by unregistered builders. *Id.* at 439.[4]

Defendant argues that, in reaching the conclusion that the statute did not violate the remedy clause, we affirmed the legislature's power to place conditions on the right to seek a remedy. However, in so concluding in *Roelle*, we relied on *Josephs v. Burns & Bear*, 260 Or 493, 503, 491 P2d 203 (1971) (citing *Noonan v. City of Portland*, 161 Or 213, 88 P2d 808 (1939)). In *Josephs* and *Noonan*, the Supreme Court held that Article I, section 10, does not "give anyone a vested right in the law, either statutory or common." *Smothers*, 332 Or at 123. In *Smothers*, the court explicitly disavowed that holding. *Id.* In doing so, the court stated:

> "If it were true that the legislature had authority to declare what rights are protected by the remedy clause, then it would follow that the legislature also had plenary authority to define what constitutes a legally cognizable injury to those rights. However, as we have explained above, the remedy clause protects absolute common-law rights respecting person, property, and reputation that existed when the drafters wrote the constitution. If the legislature constitutionally cannot abolish or alter those rights directly, then it cannot abolish them indirectly by defining narrowly what constitutes an injury to those rights. We disavow the holding * * * that the legislature constitutionally is authorized to define what constitutes an injury to absolute rights respecting person, property, and reputation that are protected by Article I, section 10."

---

[3] ORS 701.065 (1979), *amended by* Oregon Laws 1999, chapter 402, section 16, provided:

"A builder may not file a lien or bring or maintain in any court of this state a suit or action for compensation for the performance of any work or for the breach of any contract which is subject to this chapter, unless he was registered under this chapter at the time he bid or entered into the contract for performance of the work."

[4] We were not required to consider whether Article I, section 10, applies to claims for breach of contract.

*Id.* Accordingly, defendant's reliance on the cited portion of our reasoning in *Roelle* is unavailing.[5]

But our rejection of defendant's reliance on *Roelle* does not end the matter. The question remains what the court meant when it stated in *Smothers* that it "never has held that the remedy clause prohibits the legislature from * * * attaching conditions precedent to invoking [a] remedy * * *." 332 Or at 119 (paraphrasing *Mattson v. Astoria,* 39 Or 577, 580, 65 P 1066 (1901)). Plaintiff argues that, when *Mattson* was decided, it was settled that a condition precedent is a requirement for bringing a claim that generally arises after a legal injury has occurred. *See, e.g., Crown Cycle Co. v. Brown,* 39 Or 285, 290, 64 P 451 (1901) (in an action for fraud in the inducement, tender of return of acceptances is a condition precedent to bringing the action); *Trust Co. v. Multnomah County,* 38 Or 433, 437, 63 P 498 (1901) (payment of property taxes is a condition precedent to seeking equitable relief for alleged fraud in the attempt to collect the tax); *Hutchinson v. Gorham,* 37 Or 347, 351, 61 P 431 (1900) (judgment against a real property owner must have been docketed as a condition precedent to securing a lien on the property).

We agree with plaintiff that, unlike the conditions precedent in the foregoing cases, ORS 18.592(1) does not

---

[5] Defendant relies alternatively on our statement in *Roelle* that, "[i]n agreeing to undertake work on defendants' residence without a valid registration, plaintiffs entered into an illegal agreement." *Roelle,* 59 Or App at 439. Defendant argues that, because it is unlawful to drive without liability insurance, the circumstances here are analogous to those in *Roelle.* According to defendant, "[i]n each case, the plaintiff is unable to seek assistance from the courts in collecting damages because of his or her own illegal activity."

Defendant's argument is superficially appealing, because the rule barring enforcement of illegal contracts existed at common law, *see Hendrix v. McKee,* 281 Or 123, 129 n 7, 575 P2d 134 (1978), and therefore does not contravene Article I, section 10. However, unlike the circumstances here, in *Roelle,* the illegality inhered in the parties' contract itself. Defendant offers no support, and we have found none, for the proposition that, at common law, a plaintiff was barred from asserting tort claims for having engaged in unlawful conduct that was not causally related to the injury. In fact, the opposite appears to have been true. *See* Stuart M. Speiser, Charles F. Krause, Alfred W. Gans, 1 *The American Law of Torts* § 5.14, 817 (1983) ("If, at the time of the incident, the plaintiff was engaged in some act in violation of law that did not proximately contribute to the injury, then such circumstance does not preclude a recovery[.]"). Thus, *Roelle* does not support defendant's position.

impose a post-injury requirement on the initiation and prosecution of an action. Rather, to the extent—but only to the extent—that an uninsured plaintiff is seeking an award of noneconomic damages, it requires the plaintiff to prove an additional fact that existed at the time of the accident, namely, that he or she had liability insurance. The question thus becomes whether the limitation of that form of damages violates the remedy clause.

Defendant argues that it does not because it does not entirely abolish plaintiff's common-law cause of action. We agree with defendant's latter point; the cause of action is not entirely abolished. We disagree, however, with defendant's further argument that that conclusion obviates the need to consider whether the limitation on noneconomic damages leaves plaintiff with a constitutionally adequate remedy. Defendant relies on the court's prescription in *Smothers* of a sequential analytical methodology for remedy clause challenges:

> "[I]n analyzing a claim under the remedy clause, the first question is whether the plaintiff has alleged an injury to one of the absolute rights that Article I, section 10 protects. Stated differently, when the drafters wrote the Oregon Constitution in 1857, did the common law of Oregon recognize a cause of action for the alleged injury? If the answer to that question is yes, and *if the legislature has abolished the common-law cause of action for injury to rights that are protected by the remedy clause, then the second question is whether it has provided a constitutionally adequate substitute remedy for the common-law cause of action for that injury.*"

*Smothers*, 332 Or at 124 (emphasis added). That formulation is also consistent with the court's recapitulation of the *Smothers* test in *DeMendoza*, where the court stated that, if Article I, section 10, guarantees a remedy for the plaintiff's injury, "the next question is whether the legislation at issue * * * abolished that remedy without providing a constitutionally adequate substitute." *DeMendoza*, 334 Or at 433-34. Both formulations of the methodology suggest that, unless the legislature has abolished the plaintiff's remedy, we need not inquire whether the legislature has provided an adequate substitute.

However, in *Smothers*, the court also said:

"Recently, this court has suggested that, in addition to being a means for seeking redress for injury, the word 'remedy' also refers to the amount of damages that a person is entitled to recover for an injury. In *Hale*[ *v. Port of Portland*, 308 Or 508, 783 P2d 506 (1989)], for example, the court held that, under Article I, section 10, the legislature may limit the size of an award that can be recovered for an injury, so long as 'the remedy is a substantial one.' [*Id.* at 523.] *See also Greist v. Phillips*, 322 Or 281, 290, 906 P2d 789 (1995) (legislature entitled to amend amount of damages available in statutory wrongful death action without running afoul of Article I, section 10, 'as long as the plaintiff is not left without a substantial remedy'); *Neher* [*v. Chartier*, 319 Or 417, 426, 879 P2d 156 (1994)], (Article I, section 10, not violated so long as injured party has substantial remedy).

"As we have explained, the only question in this case is whether the legislature has deprived plaintiff of a *means* for seeking redress for the injury that he alleges that he suffered at work. Accordingly, it is beyond the scope of this opinion to address issues relating to the adequacy of the amount of damages that may be available under a legislatively substituted process for a common-law cause of action for injury to one of the rights that is protected by the remedy clause."

*Smothers*, 332 Or at 120 n 19 (emphasis in original).

The foregoing passage, considered in the light of previous decisions of the court, suggests that the question of whether a remedy has been abolished may require an examination of the extent to which the amount of the plaintiff's damages has been limited by legislation. It is possible to reconcile that passage with the sequential analysis that the court prescribed in *Smothers* and that it reaffirmed in *DeMendoza*, by carefully focusing on the court's use of the word "substitute," which, when used as a noun, ordinarily means "replacement." *See Entrada Lodge, Inc. v. BOLI*, 184 Or App 315, 324, 56 P3d 444 (2002) (stating that "[t]o replace someone" means "to take the place of serve as a substitute for or successor of," quoting *Webster's Third New Int'l Dictionary* 1925 (unabridged ed 1993)). It is sensible to consider the adequacy of a remedy that *replaces* a previous remedy if the latter has been entirely eliminated. However, when, as here, the

legislature has eliminated some but not all damages available in connection with a plaintiff's cause of action, the types of damages that remain available are not *substitutes* for those that were eliminated; rather, they constitute a *residual* remedy.

■ That conceptualization raises the question whether, and under what circumstances, a remedy can be considered to have been abolished if there remains only a residual—as opposed to a substitute—remedy. It appears to us that the proper inquiry in that regard is the same: whether the relief that remains available to the plaintiff is substantial. *See Hale*, 308 Or at 523 ("Article I, section 10, is not violated when the legislature alters (or even abolishes) a cause of action, so long as the party injured is not left entirely without a remedy. * * * [T]he remedy need not be precisely of the same type or extent; it is enough that the remedy is a substantial one").[6] Thus, we conclude that a remedy must be deemed to have been "abolished" if, after the legislature has altered the cause of action, the residual relief that is available to the claimant is not substantial. That conclusion is consistent with our holding in *Stone v. Finnerty*, 182 Or App 452, 458, 50 P3d 1179, *modified on other grounds on recons*, 184 Or App 111, 55 P3d 531 (2002), *rev den*, 335 Or 422 (2003). Although we held in that case that a remedy is not abolished merely because one *type* of damages has been statutorily restricted, we recognized that, in order for such a restriction to survive a remedy clause challenge, the remaining remedy must be a "substantial one." *Stone*, 182 Or App at 463-64 (stating that "Article I, section 10, focuses on *substantial remedies* for types of legal injuries rather than on the types of physical, mental or other harm suffered" (emphasis added)).

---

[6] In *Hale*, 308 Or at 523, the Supreme Court relied in part on *Noonan* and *Perozzi v. Ganiere*, 149 Or 330, 345, 40 P2d 1009 (1935). As discussed, the court in *Smothers* disavowed the reasoning in those cases. However, *Smothers* did not address the aspect of *Hale* at issue here, namely, the substantiality of a residual remedy. Moreover, cases preceding *Perozzi*—cases not based on reasoning that the Supreme Court disavowed in *Smothers*—held that section 10 permits the legislature to modify a common-law remedy. *See, e.g., Stewart*, 127 Or at 595-96 (invalidating guest passenger statute because its purpose was to abolish the cause of action rather than "to *modify the remedy*, the form of procedure, attach conditions precedent to the exercise of the right, [or] to achieve any other result unaffected by the constitutional inhibition" (emphasis added)). Thus, we conclude that the reasoning of *Hale* on which we rely here remains sound.

Accordingly, we reject defendant's argument that, because ORS 18.592(1) does not entirely abolish plaintiff's cause of action, we need not consider whether the statutory limitation on noneconomic damages leaves plaintiff with a constitutionally adequate remedy.

We turn to that inquiry. The Supreme Court has not precisely stated how the substantiality of a remedy is determined. However, cases construing other statutes that limit damages are instructive. In *Hale*, for example, the plaintiff sought economic and noneconomic damages in the combined amount of $4.5 million. The plaintiff's medical expenses alone exceeded $600,000. The defendants, Port of Portland and City of Portland, filed a motion to strike the plaintiff's prayer for damages in excess of $100,000 pursuant to ORS 30.270(1)(b), which limits the liability of public bodies to $100,000 in personal injury cases. The trial court granted the motion. The plaintiff appealed, arguing, among other things, that ORS 30.270(1)(b) deprived him of an adequate remedy in violation of Article I, section 10. The Supreme Court affirmed, concluding that the remedy was "substantial." *Hale*, 308 Or at 523-24.

Here, by contrast, the challenged statute imposes no restriction on plaintiff's economic damages. We are hard pressed to say that that residual remedy is constitutionally inadequate, given that the Supreme Court concluded in *Hale* that a recovery that compensated less than one-sixth of the plaintiff's economic damages provided a substantial remedy. Moreover, economic damages encompass a broad range of recovery. ORS 18.560(2)(a) provides:

> " 'Economic damages' means objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

Plaintiff contends that *Hale* and other cases upholding limits on damages are inapposite because, she argues, in each of those cases, the statutory scheme involved a *quid pro quo*, a tradeoff that gave the plaintiff some other benefit in exchange for the restricted remedy. In *Hale*, for example, the court said that, although the Oregon Tort Claims Act (OTCA)[7] limited the liability of public bodies to $100,000 for personal injury claims, "[t]he class of plaintiffs has been widened by the legislature by removing the requirement that an injured party show that the [public body's] activity that led to the injury was a proprietary one." *Hale*, 308 Or at 523. In fact, before the legislature enacted the OTCA, injured persons had no cause of action against public bodies for harms arising out of "governmental" activities. *Id.* at 518. Similarly, in *Evanhoff v. State Industrial Acc. Com.*, 78 Or 503, 523-24, 154 P 106 (1915), the court upheld the workers' compensation law, stating:

> "Before its enactment one workman out of three received a large compensation for his injuries by an action at law, while the remaining two were defeated and got nothing. Now every workman accepting [the statute's] provisions receives some compensation if injured; and, taken as a whole, it will be found that more money in the way of compensation is received by the whole body of injured workmen than by the inadequate remedies afforded by the courts."

Plaintiff nonetheless argues that a *quid pro quo* is necessary to uphold a statutory limitation on noneconomic damages under Article I, section 10, and she argues that ORS 18.592(1) does not afford any such tradeoff. In addition to *Hale* and *Evanhoff*, this court's decisions support the first premise of plaintiff's *quid pro quo* argument. *See, e.g., Storm v. McClung*, 168 Or App 62, 73, 4 P3d 66 (2000), *aff'd*, 334 Or 210, 47 P3d 476 (2002) (stating that, although "it appears to be acceptable under Article I, section 10, to eliminate any compensation for noneconomic damages, such as loss of society and companionship, provided that there continues to be some source of compensation for economic damages * * * the substituted remedy must provide some benefit to the class of potential plaintiffs in addition to simply eliminating or

---

[7] ORS 30.260 - 30.300.

reducing the previous remedy"). *But see Greist*, 322 Or at 290-91 (upholding the noneconomic damages cap in ORS 18.560(1) without citing any benefit to the plaintiff from its enactment).

In any event, we reject plaintiff's argument that ORS 18.592(1) does not provide such a trade-off. The Supreme Court has not decided whether a "court must analyze the remedy categorically, by examining whether potential plaintiffs as a group, not as individuals, retain a substantial remedy." *Jensen v. Whitlow*, 334 Or 412, 419 n 5, 51 P3d 599 (2002). However, in *Storm*, 168 Or App at 73, we tentatively concluded that the benefit requirement applies only to "the class of potential plaintiffs." Here, that class comprises persons who are negligently injured in motor vehicle accidents. ORS 18.592(1) generally benefits such persons. By encouraging motorists to obtain liability coverage, the statute tends to increase the pool of insurance benefits available for payment of claims. The statute provides an additional incentive for drivers to purchase liability insurance and thus increases the likelihood that accident victims—like plaintiff—will be compensated for their losses.[8]

Plaintiff asserts that no such trade-off exists. She contends that, in order to qualify, the benefit of a *quid pro quo* must inure to the same *individuals* who are forced to give something up. We disagree. When the workers' compensation statutes were enacted, it was widely acknowledged that, under the pre-existing tort system, some injured workers received large compensatory awards while others received nothing. *See Evanhoff*, 78 Or at 523. Under the workers' compensation system, injured workers who might otherwise have received nothing are compensated for their economic losses and those who likely would have prevailed in a tort claim forgo the higher damages they might have received. *Id.* Similarly, under the OTCA, which was at issue in *Hale*, persons suffering injuries arising out of governmental functions

---

[8] The legislative history of ORS 18.592(1) shows that the legislature relied on statistics demonstrating that the number of uninsured drivers in California fell by at least three percent after the voters of that state enacted a similar statute. Minutes, House Judiciary Civil Law Committee, Jan 28, 1999.

are compensated, whereas previously they were not. Plaintiffs with "proprietary functions" claims, which previously were cognizable, potentially receive reduced awards under the damages cap with no benefit in return.

■■ Admittedly, there is a risk in relying too heavily on the foregoing cases for guidance. They represent different strands of analysis that the Supreme Court has acknowledged do not share a single cohesive rationale. In *Evanhoff*, the court engaged in a balancing of interests, treating the remedy guarantee as a sort of substantive due process clause. *See Greist*, 322 Or at 290-91. In *Hale*, 308 Or at 523, the court required the legislature to replace an existing remedy with a *quid pro quo*. *See also Greist*, 322 Or at 290-91. However, even assuming that a *quid pro quo* is required in exchange for the loss of a type of damages, no appellate decision holds that the legislature must provide a specific benefit to particular persons. With the aforementioned *caveat* in mind, we conclude that the remedy clause contains no such requirement. Accordingly, we conclude that ORS 18.592(1) does not deprive uninsured plaintiffs of a substantial remedy.

■ In any event, even if the remedy clause requires that an individualized benefit be conferred on a plaintiff, plaintiff here has not shown that the compensation she received for her economic damages did not provide a substantial remedy. The record shows that the parties settled that claim for the sum of $4,210. The parties stipulated that plaintiff's non-economic damages were $5,790. Thus, plaintiff's remedy leaves her with 42.1 percent of her total damages. That recovery constitutes a substantial remedy.

To recapitulate, Article I, section 10, applies to plaintiff's claim against defendant for negligent operation of a motor vehicle. ORS 18.592(1) does not abolish plaintiff's claim, because the portion of her remedy that remains unaffected by that statute is substantial. Therefore, ORS 18.592(1) does not violate the remedy clause.

■ We turn to the parties' arguments concerning Article I, section 17. Section 17 provides that "[i]n all civil cases the right of Trial by Jury shall remain inviolate." The trial court concluded that ORS 18.592(1) violates that provision because, when a plaintiff was uninsured at the time of an accident, the statute interferes with the jury's factfinding

function in determining noneconomic damages. Defendant argues that, because proof of liability insurance coverage is an element of a claim for noneconomic damages, and the jury determines whether that element has been proved, the jury's function is not unconstitutionally impaired. Defendant also contends that, because plaintiff does not have a right to non-economic damages under Article I, section 10, there was no claim for a jury to hear and, thus, Article I, section 17, was not implicated.

Plaintiff responds that allowing a jury to determine whether a plaintiff was driving uninsured is no substitute for a jury determination of the plaintiff's noneconomic damages. She urges that "[n]o law empowers a jury to deprive a litigant of fundamental rights even when, as in criminal cases, the loss of fundamental rights may be the legal consequence of its decision." Plaintiff relies on *Lakin*, 329 Or at 82, in which the Supreme Court held that ORS 18.560(1), creating a statutory cap on noneconomic compensatory damages, violated Article I, section 17. As previously discussed in part, the court held:

> "Article I, section 17, guarantees a jury trial in civil actions for which the common law provided a jury trial when the Oregon Constitution was adopted in 1857 and in cases of like nature. In any such case, the trial of all issues of fact must be by jury. The determination of damages in a personal injury case is a question of fact. The damages available in a personal injury action include compensation for noneconomic damages resulting from the injury. The legislature may not interfere with the full effect of a jury's assessment of noneconomic damages, at least as to civil cases in which the right to jury trial was customary in 1857, or in cases of like nature."

*Lakin*, 329 Or at 82 (citations omitted). Plaintiff argues that, like the statutory cap at issue in *Lakin*, ORS 18.592(1) impairs the jury's ability to assess an injured person's non-economic damages.

■ Plaintiff's reliance on *Lakin* is misplaced.

> "Article I, section 17, is not a source of law that creates or retains a substantive claim or a theory of recovery in favor of any party. * * * The right to pursue a 'civil action,' if it exists, must arise from some source other than Article I, section 17, because that provision 'is not an independent guarantee of the existence of a cognizable claim.'"

*Jensen,* 334 Or at 422 (quoting *Sealey v. Hicks,* 309 Or 387, 396, 788 P2d 435, *cert den sub nom Sealey v. Toyota Motor Corp.,* 498 US 819 (1990), *overruled in part on other grounds by Smothers,* 332 Or at 123).[9] Put differently, Article I, section 17, does not prohibit the legislature from altering—or even abolishing—common-law causes of action, and it does not guarantee a right to particular types of damages recoverable in such claims. Instead, Article I, section 17, guarantees the right to have a jury decide those factual issues that are validly presented by the plaintiff's claim.[10]

Our conclusion is supported by our previous determination that plaintiff has no right to noneconomic damages as a remedy under Article I, section 10. In *DeMendoza,* the Supreme Court held that ORS 18.540, which allocates 60 percent of punitive damage awards to the state, does not violate Article I, section 10, and that it also does not violate Article I, section 17. Its reasoning is apt here:

> "Here, in contrast [with *Lakin*], plaintiffs have no underlying 'right to receive an award' that reflects the jury's determination of the amount of punitive damages, nor are those damages necessary to 'compensate' plaintiffs for a 'loss or injury [to them].' 334 Or at 446 (no right to punitive damages as remedy under Article I, section 10). Because plaintiffs lack that right, the legislature's allocation of a portion of the punitive damages award to the state does not implicate Article I, section 17."

*DeMendoza,* 334 Or at 447. Because ORS 18.592(1) does not violate plaintiff's right to a remedy, there remains no source of a right to recover noneconomic damages. The removal of that issue from the jury therefore does not violate Article I, section 17.

In sum, ORS 18.592(1) prescribes an additional factual issue for the trier of fact to decide in motor vehicle accident cases, namely, whether the plaintiff had liability insurance at the time of the accident. If the trier of fact finds that

---

[9] The Supreme Court decided *Jensen* after the trial court entered judgment in this case; thus, the trial court did not have the benefit of *Jensen*'s guidance in making its rulings.

[10] In *Lakin,* 329 Or at 77, the common law was the source of the plaintiff's claim. ORS 18.560(1) did not alter the factual elements of the claim. By capping noneconomic damages, ORS 18.560(1) required the trial court to enter a judgment contrary to the damages found by the jury.

the plaintiff did not have such coverage, it may not reach the issue of noneconomic damages. Because ORS 18.592(1) does not prevent a jury from deciding each factual element of a claim for personal injuries arising from the negligent operation of a motor vehicle, it does not violate Article I, section 17. The trial court erred in so concluding.

Judgment awarding noneconomic damages reversed; otherwise affirmed.