## OLIVER *v.* HUTCHINSON.

[69 Pac. 139, 1024.]

BEST EVIDENCE—ORAL TESTIMONY—JUDICIAL RECORDS.

1. Facts that are contained in judicial records may sometimes be proved by parol, depending on the purpose for which the facts are to be used: for example, a party wishing to show that a certain arrest had been made at the instigation of a particular person, may offer the oral testimony of witnesses who know the facts.

TRESPASS—COMPETENT EVIDENCE OF DAMAGE.

2. In an action for damages for trespass committed by cattle, evidence of the value of the land for pasture purposes, and as to the shrinkage of the hay crop by the pasturing of defendant's stock thereon, was competent.

INSTRUCTIONS SHOULD NOT BE INDEFINITE.

3. Where plaintiff's and defendants' land was in one inclosure, and plaintiff undertook to construct a partition fence, but was prevented by defendants, who claimed that he was building the fence on their land, and not on the line, an instruction that, if he attempted to erect a partition fence on the line between his and defendants' land, "or approximately so," and was prevented by defendants, they woul be liable for any damage he suffered on account of the trespass of their stock, was error, for it left the construction of the word "approximately" to the jury.

TRESPASSING CATTLE—PARTITION FENCE.

4. Hill's Ann. Laws, § 3445, providing that all fields and inclosures (with a certain exception) shall be fenced, does not apply to exterior fences only;

so that a plaintiff, whose lands are fenced in a common inclosure with defendants' lands, cannot recover for trespass of defendants' cattle, not having separated his lands from theirs by a fence, in the absence of malicious prevention by defendants.

From Union: ROBERT EAKIN, Judge.

This is an action by Turner Oliver against J. H. and W. R. Hutchinson to recover damages for the trespass of defendants' stock upon improved agricultural land of which the plaintiff was the lessee. The complaint alleges, in substance, that the land of plaintiff was inclosed; that, in the years 1899 and 1900 the defendants willfully, and without right, and against the consent of the plaintiff, turned in and upon his land horses and cattle, which ate up and destroyed the grasses, grain, and herbage growing thereon, and otherwise injured the land, to his damage in the aggregate sum of $800. The answer denies the material allegations of the complaint, and alleges affirmatively that plaintiff's land was inclosed with that of the defendants; that defendants turned their stock on their own land, and for want of a partition fence they wandered over and upon the land of the plaintiff; that the defendants were at all times ready and willing to erect and maintain one half of a lawful partition fence, but plaintiff refused to build or maintain any portion thereof. Upon the trial the plaintiff had a verdict and judgment for $375, and defendants appeal, assigning error in the admission of testimony and in a certain instruction to the jury.        REVERSED.

For appellants there was a brief and an oral argument by *Mr. Leroy Lomax.*

For respondent there was a brief over the name of *Thos. H. Crawford,* with an oral argument by *Mr. Turner Oliver, in pro. per.,* and *Mr. Crawford.*

MR. CHIEF JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

In the years 1899 and 1900 plaintiff was the lessee and in possession of 140 acres of land, inclosed with 600 acres belong-

ing to the defendants.  In October, 1899, he attempted to construct a partition fence between the two tracts, but his employes, while so engaged, were arrested at the instigation of the defendants for trespassing upon inclosed land, and he was prevented, as he alleges, from completing the fence, for the want of which defendants' stock was permitted to graze and feed upon his land, to his damage as alleged.

1. The first assignment of error is based upon the admission of oral testimony tending to show the arrest of plaintiff's employes while constructing the fence.  The argument is that the record in the criminal proceedings for an unlawful trespass was the best evidence, and should have been procured and offered by the plaintiff.  The oral testimony was not admitted, however, for the purpose of proving the legality of the proceedings, but to show the fact of the arrest, that it was at the instigation of the defendants, and that by reason thereof plaintiff was prevented from constructing the fence.  For this purpose the evidence was competent, and the production of the record not necessary.

2. It is next urged that the court erred in admitting evidence as to the extent of the plaintiff's damages.  He and others testified as to the value of the land for pasture purposes, and as to the shrinkage of the hay crop of 1900 by the pasturing of defendants' stock thereon.  These facts were necessary to enable the jury to intelligently estimate the damages, and, as the testimony in no sense invaded its province, it was competent.  The court instructed the jury that, if plaintiff attempted to erect a partition fence on the line between his and the defendant's lands, ''or approximately so,'' and was prevented by the acts or threats of the defendants, they would be liable for any damages that plaintiff suffered on account of the trespass of their stock; otherwise he could not recover.  There was a controversy between the parties as to the true location of the line dividing their respective premises.  The defendants testified, in effect, that the line was established in 1866, and a fence built thereon at the time; that there was a high place or ridge where the old fence stood, and that plaintiff's employes at the time of their arrest were attempting to build

a fence from six to ten feet west of this ridge, and on defendants' land. The plaintiff, on the other hand, contended, and gave evidence tending to show, that the old ridge was not the true line, but that it was from six to ten feet west thereof, and at the place where his employes were engaged in building the fence when they were arrested. In view of this condition of the testimony, it is insisted that the instruction as given was erroneous, because it did not confine plaintiff's right to build the fence on the true line, or on his own side thereof, and, although plaintiff may actually have been engaged in constructing a fence on the defendants' land, and therefore a trespasser, the defendants would be liable if the jury found that the fence was approximately on the line. This criticism is, in our opinion, well taken. Plaintiff had no right· or authority to construct a fence on the premises of the defendants, and it is a matter of no consequence whether he was ten feet or only one foot over on their land. As a matter of fact, there was a distance of only from six to ten feet between the lines contended for by the respective parties, and under this instruction it was practically left to the jury to determine whether a fence constructed on the line contended for by the plaintiff, if not the true line, would be approximately so; in other words, the jury could have found that as a matter of fact the line was as contended for by the defendants, and that plaintiff's employes were engaged in building a fence six feet over on their land, and yet have found a verdict in favor of the plaintiff, if, in its opinion, the proposed fence was "approximately" on the true line. "Approximately" simply means "nearly" or "closely;" so the jury could properly have found that the proposed fence was on the defendants' land, and yet, under the rule of law as given, they would be liable. The true location of the boundary line was evidently an important feature in the case, and it would have been no proof of the cause of action alleged in the complaint if the plaintiff was arrested or prevented from building the fence any distance whatever from the line and on the defendants' land. The instruction as given was not a definite and certain guide to the jury, but left

it to determine what would satisfy the requirement that the fence must be approximately on the true line.

Because of the error in the instruction given the judgment must be reversed, and a new trial ordered.     REVERSED.

Decided 25 August, 1902.

ON PETITION FOR REHEARING.

MR. JUSTICE BEAN delivered the opinion.

4. The plaintiff now makes the point that the erroneous instruction referred to in the opinion was harmless error, because he was under no obligation to fence against the stock of the defendants, but they were bound to keep it on their own land, and, if they failed to do so, would be liable in damages for the trespass whether the plaintiff's land was fenced or not; in other words, his position is that, as it pertains to the land of several parties inclosed with one fence, the common-law rule prevails, and each owner must at his peril keep his stock off of his neighbor's land. The statute (Hill's Ann. Laws, § 3445,) provides that all fields and enclosures, except in what was known as Umatilla County in 1872, shall be fenced with a certain kind of fence, and in *Campbell* v. *Bridwell*, 5 Or. 311, it was held that this statute, where applicable, repealed the common-law rule whereby the owner of domestic stock was made liable for an injury done by it to the uninclosed land of another. And there is no reason, so far as we can see, why the statute should be construed to apply to exterior fences only. It makes no distinction between exterior and division fences, but requires all fields to be inclosed with a fence; and, under the decision referred to, if the landowner would have a remedy for the trespass of stock he must inclose his land, unless, of course, as the plaintiff attempted to show in this case, he was prevented from doing so by the wrongful act of the owner of the stock. The statute of Indiana, under which the decision principally relied on by the plaintiff (*Myers* v. *Dodd*, 9 Ind. 190, 68 Am. Dec. 624,) was made, differs materially from our statute. It simply defines what shall con-

stitute a lawful fence, and then provides that the owner of domestic animals shall be liable for damages done to the land of another unless inclosed by such a fence: 1 Rev. Stat. Ind. 1852, p. 292. But there is no provision that all fields shall be so inclosed, and the courts of that state have held that the common-law rule prevails except as to exterior fences. The petition for rehearing is denied.    REHEARING DENIED.

Decided 16 June, 1902.