Argued and submitted September 10, 2004, decision of the Court of Appeals affirmed, judgment of circuit court affirmed in part and reversed in part, case remanded to circuit court for further proceedings September 9, reconsideration denied October 20, 2005

Elisa LAWSON,
*Petitioner on Review,*

*v.*

Spencer HOKE,
*Respondent on Review.*

(CC 0101-00766; CA A117388; SC S51044)

119 P3d 210

Willard E. Merkel, of Merkel & Associates, Portland, argued the cause and filed the brief for petitioner on review.

Janet M. Schroer, of Hoffman, Hart & Wagner, LLP, Portland, argued the cause and filed the brief for respondent on review. With her on the brief was Marjorie A. Speirs.

W. Eugene Hallman, of Hallman & Dretke, Pendleton, argued the cause and filed a brief for *amicus curiae* Oregon Trial Lawyers Association. Richard E. Oberdorfer and S. Patricia Oberdorfer, of Oberdorfer Law Firm LLC, Portland, also filed a brief.

Robert M. Atkinson, Assistant Attorney General, Salem, filed a brief for *amicus curiae* State of Oregon. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Benjamin M. Bloom, of Hornecker, Cowling, Hassen & Heysell, LLP, Medford, filed a brief for *amicus curiae* Oregon Association of Defense Counsel.

Jonathan M. Hoffman, of Martin Bischoff *et al.*, Portland, filed a brief for *amicus curiae* Product Liability Advisory Council, Inc. With him on the brief was Justin M. Thorp.

David L. Runner, Appellate Counsel, Salem, filed a brief for *amici curiae* SAIF Corporation, Pape Group, Inc., and Timber Products Company.

Lisa E. Lear, of Bullivant Houser Bailey PC, Portland, filed a brief for *amici curiae* Allstate Insurance Company,

Oregon Mutual Insurance Company, and State Farm Insurance Company. With her on the brief were Jeffrey S. Eden and John R. Bachofner.

GILLETTE, J.

De Muniz, J., dissented and filed an opinion in which Durham and Riggs, JJ., joined.

**GILLETTE, J.**

This personal injury action arising out of an automobile collision raises a fundamental issue concerning the legislature's ability to choose a particular legal device as a way to advance a particular public policy. Here, the legislature chose the device of precluding an award of certain forms of civil damages to those who violate the policy in question—compulsory automobile insurance—as a kind of "stick" to encourage persons to abide by that public policy. For the reasons that follow, we conclude that the legislative choice in this particular case is a constitutionally permissible one.

The pertinent background and procedural facts are not in dispute. Plaintiff was involved in an automobile accident in which defendant was at fault. Plaintiff suffered both economic and noneconomic injuries as a result of the accident. Plaintiff brought the present action against defendant, seeking damages for both forms of injury. However, as plaintiff acknowledges, she was, at the time of the accident, an uninsured motorist. A statute, ORS 31.715,[1] set out *post*, 339 Or at 260, specifically precludes uninsured drivers from recovering "noneconomic damages" for injuries sustained in an action arising out of the operation of a motor vehicle.

Before trial, defendant, relying on ORS 31.715, moved for partial summary judgment on the issue of plaintiff's entitlement to noneconomic damages. The trial court denied the motion and, after a bench trial, awarded the plaintiff $5,790 in noneconomic damages.[2] Defendant appealed to the Court of Appeals, which reversed that part of the judgment for plaintiff that awarded noneconomic damages. *Lawson v. Hoke*, 190 Or App 92, 77 P3d 1160 (2003). We

---

[1] The legislature enacted the statute precluding uninsured motorists from recovering damages for noneconomic injuries in 1999. Or Laws 1999, ch 1065, § 1. The pertinent section of that statute originally was numbered as ORS 18.592, and that is how the statute is cited in the Court of Appeals opinion and in the parties' briefs. However, in 2003, *former* ORS 18.592 was renumbered as ORS 31.715. There was no textual change accompanying the renumbering. For ease of reference, we refer in this opinion to the statutory citation in effect today.

[2] The parties earlier had settled plaintiff's claim for economic damages for $4,210.

allowed plaintiff's petition for review and now affirm the decision of the Court of Appeals.

In this court, plaintiff argues that her right to recover damages for the noneconomic injuries that she suffered as a result of defendant's negligence is a fundamental right that was recognized in 1857, when Oregon's constitution was drafted. It follows, plaintiff reasons, that the right to recover damages for such injuries is a "remedy" protected under Article I, section 10, of the Oregon Constitution.[3] Accordingly, plaintiff argues, to the extent that ORS 31.715 precludes her from recovering damages for those injuries— *i.e.*, precludes her from obtaining that remedy—it violates Article I, section 10. In addition, plaintiff argues that, to the extent that she has a protected constitutional claim to noneconomic damages, Article I, section 17, of the Oregon Constitution guarantees her the right to have a jury decide her entitlement to those damages. And, she argues, because ORS 31.715 removes the question of her entitlement to noneconomic damages from the jury's consideration, it also violates Article 1, section 17.[4]

We first examine the constitutionality of ORS 31.715 under Article I, section 10. In *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001), this court analyzed the limits on the legislature's power under Article I, section 10, to enact laws purporting to limit a person's right to seek redress for another person's negligence in the workplace. *Smothers* involved an injured employee's challenge to the exclusive remedy provision of the workers' compensation law, which effectively denied a remedy to a worker in any case in which a worker's employment conditions were not the major contributing cause of the worker's disability or disease: The employee in *Smothers* had no remedy under the workers' compensation law, because workplace exposure was not the

---

[3] Article I, section 10, of the Oregon Constitution provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

[4] Article I, section 17, of the Oregon Constitution provides:

"In all civil cases the right of Trial by Jury shall remain inviolate."

"major contributing cause" of his debilitating lung condition, and he had no remedy otherwise, because a specific legislative enactment denied him the alternative of seeking a remedy through a tort action.

The court reviewed the historical development of the remedy clause of Article I, section 10, and concluded that that clause protects "absolute common-law rights" that existed when the Oregon Constitution was drafted by guaranteeing that a remedy always would be available for injury to those rights. *Id.* at 118-19. In considering the plaintiff's claim in *Smothers*, this court began by noting that a common-law cause of action for negligence existed at the time that the Oregon Constitution was created. *Id.* at 129. The court did not end its analysis there, however. Rather, the court stated that a more specific inquiry was necessary, *viz.*, whether the common law would have recognized a cause of action for negligence under the particular circumstances of that case. *Id.* at 128. In *Smothers*, the particular circumstances that the court identified were that the plaintiff suffered a permanent injury because the defendant negligently permitted an unsafe condition to develop in the area where the plaintiff worked, that the defendant had been aware that exposure to that condition could harm the plaintiff, and that the defendant did not protect the plaintiff from exposure or warn the plaintiff that he would be exposed to that condition. *Id.* at 129.

After reviewing various sources in an effort to determine the content of the common law at the time that the Oregon Constitution was drafted, the court in *Smothers* concluded that, in 1857, the common law of Oregon would have recognized that a worker had a cause of action for negligence against his or her employer for failing to provide a safe work environment and for failing to warn of the dangerous conditions to which workers would be exposed. *Id.* at 131. Consequently, the court concluded that the exclusive remedy provision of ORS 656.018 (1985) violated Article I, section 10, because that statute denied the plaintiff any remedy for a wrong with respect to which he would have been entitled to a remedy at the time that the Oregon Constitution was framed. *Id.* at 135-36. The key consideration in the case was the fact that the statute left the plaintiff with no remedy *at all*, either through workers' compensation *or* a traditional tort action.

*Id.* However, as this court specifically noted, if a worker has an absolute common-law right to a remedy for the employer's negligence, "and the claim is accepted and the worker receives the benefits provided by the workers' compensation statutes, then the worker cannot complain that he or she has been deprived of a remedial process for seeking redress for injury to a right that the remedy clause protects." *Id.* at 135.

■ The methodology that this court used in *Smothers* applies equally here. Under that methodology, the first question that we must decide is whether an "absolute common-law right" that existed when the Oregon Constitution was drafted in 1857 would have provided plaintiff with a remedy for the injuries that she sustained in the accident with defendant. To answer that question, we first must identify the circumstances of the case that are pertinent to the inquiry, beyond the fact that plaintiff was injured as a result of defendant's negligence. For herself, plaintiff contends that the question before the court simply is whether, in 1857, the common law would have recognized the absolute right of a person operating a vehicle on a public road to recover damages for noneconomic injuries resulting from the negligence of another driver. We can answer that question easily: The common law of Oregon would have recognized the right to bring such an action.

We think that plaintiff's formulation of the issue before us is incomplete, however. A complete statement of the pertinent circumstances must include one other circumstance.[5] That additional "circumstance" of the accident is the fact that, as already noted, at the time of her accident with

---

[5] Defendant argues that the circumstances of the case, *viz.*, the accident involved "highly regulated motor vehicles," are so utterly different from a negligence action involving horse-drawn wagons in 1857 that we cannot conclude that the framers would have thought that a remedy would be available. However, our examination of the case law satisfies us that defendant's historical premise is not correct. Aside from the difference in horsepower—one, two, or possibly four versus two or three hundred—we see no difference in principle between vehicles negligently driven in the nineteenth century and vehicles negligently driven today. Indeed, case law from other jurisdictions includes cases of negligent wagon-driving that seem very similar to cases from the present day involving auto accidents. *See, e.g., Broschart v. Tuttle,* 59 Conn 1, 21 A 925 (1890) (defendant's negligent failure to keep horse under control resulted in death of plaintiff's horse); *Lyons v. Desotelle,* 124 Mass 387 (1877) (action for injury of horse fastened at side of road by negligence of another in driving against it).

defendant, plaintiff was not insured under a motor vehicle liability insurance policy as required by law and, as a result, was not entitled to be operating her motor vehicle on a public highway at the time of the accident. The issue in the case thus becomes: Would the authors of the remedy clause have considered it to be impermissible to condition recovery of certain damages on plaintiff's having a license to be at the place where her injuries occurred? We turn to that question.

The statute at issue, ORS 31.715(1), provides, in part:

"Except [for certain situations not applicable to the present case] * * *, a plaintiff may not recover noneconomic damages, as defined in ORS 31.710, in any action for injury or death arising out of the operation of a motor vehicle if the plaintiff was in violation of ORS 806.010 [driving uninsured] or 813.010 [driving under the influence of intoxicants] at the time the act or omission causing the death or injury occurred. A claim for noneconomic damages shall not be considered by the jury if the jury determines[6] that the limitation on liability established by this section applies to the claim for noneconomic damages."

ORS 31.710, which is cross-referenced in ORS 31.715, above, provides the following definition of "noneconomic damages":

" 'Noneconomic damages' means subjective, nonmonetary losses, including but not limited to pain, mental suffering, emotional distress, humiliation, injury to reputation, loss of care, comfort, companionship and society, loss of consortium, inconvenience and interference with normal and usual activities apart from gainful employment."

Oregon's financial responsibility law, ORS 806.010 to 806.300, requires all drivers on public roads to be adequately insured. ORS 806.010, the statute specifically cross-referenced in ORS 31.715(1) that is relevant to this case, makes it a Class B traffic violation to drive a motor vehicle on

---

[6] ORS 31.715(1) refers to a jury's consideration and determination of claims. We do not find any basis in that wording to suggest that the issue referred to can *only* be tried to a jury. There is no suggestion in that wording—and, indeed, no party asserts with respect to that wording—that the issue could not be decided by a judge sitting alone, as in this case, either on motion for summary judgment or as a trier of fact.

a public highway of Oregon without being insured to the extent stated in those statutes.[7] Thus, in this case, our specific inquiry is whether, under the common law as it existed in 1857, plaintiff, who was herself in violation of a law relating to her right to be on a public highway at the time of the accident, nonetheless would have had an absolute right to recover damages for all her injuries—including noneconomic injuries—resulting from defendant's negligence.[8]

We begin by noting that the text of the pertinent statutes demonstrates that, strictly speaking, this is *not* a *Smothers* case. No statute denies this plaintiff a remedy. Indeed, it lay entirely within this plaintiff's control to be fully qualified to be awarded all damages arising out of the kind of harm that she suffered. She was never—and persons similarly situated still are not—a person with *no* remedy for a harm that the common law recognized. With the foregoing observations in mind, we turn to a more detailed examination of the issue under the *Smothers* methodology.

We have found no Oregon cases from around the time of the adoption of the Oregon Constitution that so closely match the circumstances of this case that they are dispositive. Facing the same predicament, the *Smothers* court looked to various other sources to determine the content of the common law at the time of the drafting of the Oregon Constitution, including roughly contemporaneous cases from

---

[7] ORS 806.010 provides, in part:

"(1) A person commits the offense of driving uninsured if the person operates a motor vehicle in this state on any highway or premises open to the public in this state without either:

"(a) The person being insured while driving the vehicle under a motor vehicle liability policy that meets the requirements described under ORS 806.080 [setting out minimum required insurance coverage] or

"(b) The person or the owner of the vehicle providing the Department of Transportation with other satisfactory proof of compliance with the financial responsibility requirements of this state."

[8] Defendant argues that the statutory provision denying an uninsured motorist the right to recover damages for noneconomic injuries establishes a condition precedent to invoking a remedy, similar to a condition requiring a person claiming libel to demand a retraction before suing. We do not reach that question because, as will be seen in the text below, the fact of plaintiff's own statutory violation, as a circumstance of the accident, casts sufficient doubt on the existence of an absolute common-law remedy for plaintiff's injuries that we cannot conclude that ORS 18.592(1) is unconstitutional.

other jurisdictions, as well as Oregon cases decided in the decades shortly after the adoption of the constitution. *Smothers*, 332 Or at 129. We do the same here.

We begin by noting in passing the indisputable proposition that, in the early years of this state's history, a plaintiff's contributory negligence was an absolute bar to recovery for the negligent acts of another. That is, a plaintiff could not recover damages for injuries caused by the negligence of another if his own carelessness or negligence contributed in any way to his injuries. *See, e.g., Stone v. Oregon City Mfg. Co.*, 4 Or 52 (1870) (under doctrine of contributory negligence, employee who was injured in workplace by equipment that his employer had negligently maintained would be denied recovery if evidence tended to show that employee could have avoided injury had he been more attentive). We mention that rule only to illustrate that the right to bring an action at common law could be limited.

However, the foregoing rule respecting contributory negligence was one that developed in the common law. What of statutory rules? Cases somewhat resembling the instant case factually are the so-called "Sunday law" cases from other jurisdictions. Before and around the time of the adoption of the Oregon Constitution, many states had laws prohibiting citizens from traveling on Sundays unless the purpose of the travel could be characterized as being either necessary or charitable. And, at that time, certain courts held that plaintiffs who traveled in violation of Sunday laws were not entitled to recover for any injuries that might have been caused by a city's or municipality's negligent failure to keep the streets in good repair. *See, e.g., Bosworth v. Swansey*, 51 Mass (10 Met) 363, 365 (1845) (concluding that person's violation of law was a "species of fault on his part" precluding recovery); *Hinckley v. Penobscot*, 42 Me 89 (1856) (denying recovery to plaintiff injured while traveling on Sunday when he failed to establish that his travel was work of charity or necessity); *Johnson v. Irasburgh*, 47 Vt 28 (1874) (stating same principle). Those cases tell us, at a minimum, that it was not unfamiliar to the common law of the mid-nineteenth century for courts to deny a remedy for negligence to a plaintiff who was in violation of positive statutory law when the

accident occurred, even if the plaintiff's violation of the law did not contribute directly to the accident.

The logic of the *Bosworth* line of cases fairly can be challenged on the ground that the coincidence of the plaintiff's violation of the Sunday laws and the defendant's negligence in no way establishes that the violation was itself negligence that contributed even slightly to the accident. That is, there is a causal connection between the violation of the statute and the plaintiff's injury only in the "but-for" sense. Indeed, a number of courts in other jurisdictions took that view at the time and declined to view the plaintiff's violation of the Sunday laws as grounds for recovery from a negligent defendant. *See, e.g., Broschart v. Tuttle*, 59 Conn 1, 21 A 925 (1890) (stating that conclusion after extensive consideration of case law). The point is not, however, that some courts viewed Sunday laws as a ban to recovery while others did not. The point is that, at and before the time of Oregon's statehood, some American common-law courts took the view that violations of law could be a bar to recovery for negligence. More importantly, those courts took that view *even in the absence of any legislative directive to do so.*

Perhaps the closest examples to our present case are the livestock fencing cases. In agrarian states, it was common for domesticated animals to wander onto property other than that of their owner and to do damage there. From at least early in the nineteenth century, legislatures addressed the problem. For example, in Indiana (the state whose constitution is the source of Article I, section 10),[9] the legislature enacted a statute respecting enclosures, trespassing animals, and partition fences. *See Myers v. Dodd*, 9 Ind 290 (1857). The first section of the statute required that a partition fence, to be lawful, be such as a good husbandman would keep. *Id.* at 290-91. The second section provided that, "if any domestic animal break into an enclosure, the person injured thereby shall recover the amount of damage done, if it shall appear that the fence through which the animal broke was lawful; but not otherwise." *Id.* at 291 (paraphrasing statute). The

---

[9] *See* Charles Henry Carey, ed., *The Oregon Constitution and Proceedings and Debates of the Constitutional Convention of 1857* 468 (1926) (so stating).

Indiana Supreme Court held that such an exercise of the legislative power in denying a remedy was lawful. *Id.*

As early as 1870—only 11 years after statehood—Oregon enacted a fence law similar to that of Indiana's. Section 1 of that statute set standards for the adequacy of fences for "all fields and inclosures." Miscellaneous Laws of Oregon, ch XV, title I, § 1, p 579 (1870) (Deady & Lane 1843-1872). Section 4 of the statute provided, in part:

> "If any horse, cattle or stock, break into any enclosures, the fence being of the height and sufficiency aforesaid; * * * the owner of such animal shall * * * make reparation to the party injured [on a scale of reparation based on whether the trespass was a first trespass, or a repeated one]."

*Id.* Four years later, in *Campbell v. Bridwell*, 5 Or 311 (1874), this court sustained the statute's abrogation of the common law. *Campbell* was a case alleging trespass by cattle, but the plaintiff in that case did not allege that the plaintiff's land was fenced in compliance with the statute. This court held that, in light of the statute, the absence of that allegation was fatal to the complaint. *Id.* at 312-13. *Accord Bileu v. Paisley*, 18 Or 47, 52, 21 P 934 (1889); *see also Oliver v. Hutchinson*, 41 Or 443, 69 P 1024 (1902) (citing *Campbell*, holding Oregon's statutory abrogation of common law more extensive than Indiana statute cited in *Myers*).

We note that, in the livestock fencing cases, as in the other classes of cases that we have reviewed, a party was disqualified from obtaining a remedy on account of the party's violation of law, without regard to whether the violation had any causal relationship (beyond "but-for" causation) to the party's alleged injury. The livestock fencing cases are particularly noteworthy because they are cases in which the legislature affirmatively directed that, when the statute was violated, there would be no remedy.

We think that the foregoing examples are illustrative of a common theme: Early in our nation's (and our state's) history, a plaintiff who would not have suffered the injury complained of had he or she obeyed the law could be denied the right to recover damages for his or her injuries. In light of that common theme, and in the absence of any case

law or other authority to the contrary that is more persuasive, we conclude that no "absolute common-law right" that existed when the Oregon Constitution was drafted in 1857 would have guaranteed plaintiff a remedy for her injuries—either economic or noneconomic—under the circumstances of this case. Thus, even if this case were otherwise wholly analogous to *Smothers*, plaintiff's argument under Article I, section 10, would fail.[10]

We address one remaining issue in our analysis under Article I, section 10. *Amicus* Oregon Trial Lawyers Association (OTLA) argues that there are no Oregon cases interpreting Article I, section 10, in which a party was denied a remedy because of that party's "unrelated defalcations," and asks rhetorically whether the legislature could deny a parent who is behind in child support payments the right to bring a wrongful death action for the death of his child, or deny a property owner who is behind in his property taxes the right to bring a trespass action. That argument is misplaced. Despite the fact that plaintiff's violation of the financial responsibility law did not contribute directly to her accident, it is not an "unrelated defalcation" analogous to those in OTLA's examples. If plaintiff had complied with ORS 806.010, she would not have been on the road at the time that defendant committed the traffic infraction that caused the accident.[11] In much the same way that a person's failure to maintain a lawful fence placed him or her in a position to be injured by trespassing livestock, as in the livestock fencing cases, plaintiff's violation of ORS 806.010 in this case was in the chain of causation that led to the accident. This is not a case in which the legislature has attempted to condition a person's right to a remedy on compliance with a law that is

---

[10] It is at this point that the dissenters part company with us. They refuse to look beyond the fact of injury, thereby wholly failing to recognize that, at the time of the drafting of the Oregon Constitution, it was assumed around the country that certain barriers, both common law (*e.g.*, assumption of risk) and statutory (*e.g.*, fencing laws), permissibly could defeat an otherwise meritorious personal injury case. We hold no more here than that Article I, section 10, did not abolish the permissibility of such limitations.

[11] Of course, plaintiff also could have complied with ORS 806.010 by being insured under a motor vehicle liability policy that met the requirements of the financial responsibility laws of the state. In that case, ORS 31.715 would not have operated to bar her recovery for the noneconomic losses that she sustained in the accident with defendant, and this case would not be before us.

unrelated to the circumstances that led to the action, and we express no opinion respecting any attempt to create such a rule.

■    As noted, plaintiff also has argued that, insofar as ORS 31.715 removes the question of her entitlement to non-economic damages from the jury's consideration, it violates Article I, section 17, of the Oregon Constitution, which provides that, "[i]n all civil cases, the right of Trial by Jury shall remain inviolate." Plaintiff and one of the *amici* have asserted that, in *Lakin v. Senco Products, Inc.*, 329 Or 62, 987 P2d 463 (1999), this court held that a law that purported to *cap* the amount of noneconomic damages that a successful litigant could recover in a personal injury case violated Article I, section 17, and *a fortiori*, a law that *eliminates* the right to recover noneconomic damages also violates that constitutional provision. As we explain below, plaintiff's Article I, section 17, argument fails for the same reasons that her Article I, section 10, argument does.

In *Lakin*, the plaintiff sued a nail gun manufacturer after the nail gun that he was using misfired and caused him serious, permanent injuries. The jury awarded the plaintiff and his wife $2,000,000 and $876,000, respectively, in non-economic damages, and the trial court reduced each award to $500,000 in accordance with the statutory cap. In reinstating the jury's awards of noneconomic damages, this court reasoned that Article I, section 17, guarantees a jury trial in civil actions for which the common law provided a jury trial when the Oregon Constitution was drafted in 1857, and that means that all issues of fact in those cases must be tried by a jury. *Lakin*, 329 Or at 82. The determination of damages, including noneconomic damages, available in a personal injury action, is a question of fact, and, therefore, the legislature may not interfere with the full effect of a jury's assessment of noneconomic damages, at least as to civil cases in which the right to a jury trial was customary in 1857. *Id.*

In *Lakin*, however, there was no question that the plaintiff had the right to seek noneconomic damages for her injuries; rather, the issue was whether the legislature had

the authority to limit the amount of damages that a plaintiff could recover in a particular case. In this case, by contrast, the issue before the court is whether plaintiff has the right to seek noneconomic damages under the circumstances of her case.

As this court stated in *Jensen v. Whitlow*, 334 Or 412, 422, 51 P3d 599 (2002), "Article I, section 17, is not a source of law that creates or retains a substantive claim or a theory of recovery in favor of any party." Instead, Article I, section 17, simply " 'guarantees a jury trial in civil actions for which the common law provided a jury trial when the Oregon Constitution was adopted in 1857.' " *Id., quoting Lakin*, 329 Or at 82. This court continued in *Jensen*, "The right to pursue a 'civil action,' if it exists, must arise from some source other than Article I, section 17, because that provision is not an independent guarantee of the existence of a cognizable claim." *Id.* (internal quotation marks omitted); *see also DeMendoza v. Huffman*, 334 Or 425, 447, 51 P3d 1232 (2002) (rejecting plaintiffs' argument that law requiring plaintiffs to split punitive damages with state violated Article I, section 17, on ground that plaintiffs had no underlying right to receive award reflecting jury's determination of punitive damages, and those damages were not necessary to compensate plaintiffs for their losses or injuries).

In this case, we already have held that no "absolute common-law right" that existed when the Oregon Constitution was drafted in 1857 would have guaranteed a person in plaintiff's position (as violator of a law requiring drivers to have insurance) a remedy for her injuries. No other source of law authorizes plaintiff's claim for noneconomic damages. Certainly, Article I, section 17, does not provide such a source. It follows, then, that the legislature's choice to preclude uninsured drivers from recovering noneconomic damages does not implicate Article I, section 17, of the Oregon Constitution.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

**DE MUNIZ, J.,** dissenting.

In *Smothers v. Gresham Transfer, Inc.*, 332 Or 83, 23 P3d 333 (2001), this court concluded that, because Article I, section 10, of the Oregon Constitution guarantees a remedy for any "injury" to absolute common-law rights respecting person, property, or reputation, the legislature does not have plenary authority to deprive an injured person of their damages for such injuries. *Id.* at 135-36. Today, the majority retreats from that interpretation of Article I, section 10, by concluding that the legislature may bar injured litigants from seeking a remedy for harm to an absolute common-law right. I respectfully dissent.

Article I, section 10, of the Oregon Constitution provides that "justice shall be administered * * * completely" and that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation." In *Smothers*, this court explained the wisdom of the remedies clause:

> "[T]he remedy clause of Article I, section 10, protects rights respecting person, property, and reputation that, in 1857, the common law regarded as 'absolute,' that is, that derive from nature or reason rather than solely from membership in civil society. By the seventeenth century, the remedial side of the common law had developed to protect those rights in the event of injury by any other subject of the English realm. The function of common-law causes of action was to restore 'justice' or 'right' following injury. 'Injury' at common law meant any harm or wrong to absolute rights for which a cause of action existed."

*Smothers*, 332 Or at 123-24. *Smothers* reached the foregoing conclusion by tracing the history and meaning of the remedies clause, from its origins in the Magna Carta to its inclusion in the Oregon Constitution. *Id.* at 94-115; *see also* Thomas R. Phillips, *The Constitutional Right to a Remedy*, 78 NYU L Rev 1309 (2003) (reviewing history of concept). *Smothers* focused on the ideas of Sir Edward Coke and Sir William Blackstone, because both Coke and Blackstone influenced the drafters of early American constitutions significantly. 332 Or at 94-99.

Coke expanded the laconic protections found in the Magna Carta—"We will sell to no man, we will not deny or defer to any man either justice or right"—into a workable concept of free access to the courts and justice. The assurance in the Magna Carta that the government would not sell, deny, or defer justice or right meant that, in Coke's words:

> "* * * every subject of this realme, for injury done to him in bonis, terris, vel persona, by any other subject, be he ecclesiastical, or temporall, free, or bond, man, or woman, old, or young, or be he outlawed, excommunicated, or any other without exception, may take his remedy by the course of the law, and have justice, and right for the injury done to him, freely without sale, fully without any deniall, and speedily without delay."

*Smothers*, 332 Or at 96-97 (quoting Edward Coke, *The Second Part of the Institutes of the Laws of England* 55 (1797)). Based on that proposition, this court observed, "Coke asserted that the common law of England had come to guarantee every subject a legal remedy for injury to goods, lands, or person caused by any other subject." *Id.* at 97. Coke also emphasized that justice must be *"plena, quia justitia non debet claudicare,"* which means that justice must be "full, for justice should not limp." Coke, *Second Part of the Institutes* at 55. That is the source, in our own state constitution, of the requirement that "justice shall be administered * * * completely." Or Const, Art I, § 10. Coke thus established the intellectual underpinnings of the modern constitutional protection of remedies for civil wrongs.

Blackstone later presented Coke's ideas within the philosophical context of eighteenth-century ideas regarding natural law. Blackstone located the right to a remedy squarely within the framework of what he termed absolute rights—that is, rights of the individual that find their provenance in natural law:

> "The rights of persons considered in their natural capacities are also of two sorts, absolute, and relative. Absolute, which are such as appertain and belong to particular men, merely as individuals or single persons: relative, which are incident to them as members of society, and standing in various relations to each other. * * * By the absolute *rights* of individuals we mean those which are so in their primary

and strictest sense; such as would belong to their persons merely in a state of nature, and which every man is entitled to enjoy whether out of society or in it."

1 William Blackstone, *Commentaries on the Laws of England* 119 (1765) (emphasis in original). Absolute rights, thus understood, are individual liberties of the highest importance. Based on Blackstone's discussion, *Smothers* observed that,

"[t]o Blackstone, the guarantee of legal remedy for injury 'is what we mean properly, when we speak of the protection of the law.' *Smothers*, 332 Or at 99 (quoting William Blackstone, 1 Blackstone *commentaries* *56). Hence, the maxim of English law, *Ubi jus, ibi remedium*: 'for every right, there must be a remedy.' "

*Id.* According to *Smothers*, the remedies clause reflects an absolute right.

Many states adopted remedies clauses in their own constitutions. *Smothers*, 332 Or at 104. During the nineteenth century, state courts used their remedies clauses to prevent legislative interference with judicial proceedings. *Id.* at 108-12. *Smothers* ascertained:

"[W]hen the Oregon Constitutional Convention convened in 1857, courts and commentators had provided considerable insight into the background and meaning of remedy clauses in state declarations or bills of rights. Those cases and commentaries revealed that the purpose of remedy clauses was to protect 'absolute' common-law rights. For injuries to those rights, the remedial side of the common law had provided causes of action that were intended to restore right or justice. Remedy clauses mandated the continued availability of remedy for injury to absolute rights. The requirement that remedy be by due course or due process of law was intended as a limitation on the legislature's authority when it substituted statutory remedies for common-law remedies. It was the duty of courts to enforce those restraints in evaluating whether particular statutory remedies satisfied the requirement that remedy be by 'due course of law.' "

*Id.* at 112. In light of its historical analysis, the court confirmed that "the history of the remedy clause indicates that

its purpose is to protect absolute common-law rights respecting person, property, and reputation, as those rights existed when the Oregon Constitution was drafted in 1857." *Id.* at 118.

Based on the foregoing understanding of the remedies clause, *Smothers* struck down the legislature's imposition of a barrier to recovery for an injury that the court determined was compensable at common law, namely, an employee's cause of action against an employer for failing to provide a safe work environment. 332 Or at 135-36. *Smothers* observed that, in 1857, a citizen enjoyed the right to recover for injuries suffered through negligence of others. *Id.* at 129. The plaintiff in *Smothers* was unconstitutionally denied his right to a remedy when the legislatively created workers' compensation system failed to award him damages for his injuries. More generally, however, *Smothers* established that the Oregon Constitution protects the compensatory purpose of the civil justice system from legislative interference.

In this case, the legislature has imposed a barrier to recovery of noneconomic damages in certain kinds of motor vehicle accidents, based on whether the plaintiff has contracted for motor vehicle insurance before the time of the accident.[1] The majority concludes that the legislature may raise such a barrier because plaintiff's common-law right to

---

[1] ORS 31.715 provides:

"(1) Except as provided in this section, a plaintiff may not recover noneconomic damages, as defined in ORS 31.710, in any action for injury or death arising out of the operation of a motor vehicle if the plaintiff was in violation of ORS 806.010 or 813.010 at the time the act or omission causing the death or injury occurred. A claim for noneconomic damages shall not be considered by the jury if the jury determines that the limitation on liability established by this section applies to the claim for noneconomic damages.

"(2) For the purpose of the limitation on liability established by this section, a person is conclusively presumed to have been in violation of ORS 806.010 or 813.010 if the person is convicted in a criminal proceeding of one or both of those offenses. If the person has not been convicted of violating ORS 806.010 or 813.010, the defendant in the civil action may establish in the civil action, by a preponderance of the evidence, that the plaintiff was in violation of ORS 806.010 or 813.010 at the time the act or omission causing the death or injury occurred.

"(3) The court shall abate a civil action upon the motion of any defendant in the civil action against whom a plaintiff has asserted a claim for noneconomic damages if the defendant alleges that the claim of the plaintiff is subject to the limitation on liability established by this section and:

recover for injuries negligently inflicted by another person was not unfettered or absolute at the time that the Oregon Constitution was drafted. Unfortunately, rather than basing its reasoning in the constitutional text, history, and theory that this court outlined in *Smothers*, the majority defends its conclusion by referring to a few scattered examples of nineteenth-century laws regarding Sunday travel and live-stock fencing enacted in other states.

The majority's examples—put forward to show that the original understanding of the remedies clause permitted the legislature to enact barriers to recovery in tort—are not compelling, given that they must overcome the primary purpose of the remedies clause, which was designed to protect individual rights. First, the fact that a legislature in some state enacted a certain kind of legislation during the nine-teenth century proves little assistance to the analysis, because the legislation advanced as an example itself may

"(a) A criminal proceeding for a violation of ORS 813.010 has been com-menced against the plaintiff in the civil action at the time the motion is made; or

"(b) The district attorney for the county in which the conduct occurred informs the court at the time the motion is made that criminal proceedings for a violation of ORS 813.010 will be commenced against the plaintiff in the civil action.

"(4) The court may order that only the claim that is subject to the limita-tion on liability established by this section be abated under subsection (3) of this section. An abatement under subsection (3) of this section shall remain in effect until the conclusion of the criminal proceedings.

"(5) The limitation on liability established by this section does not apply if:

"(a) The defendant in the civil action was also in violation of ORS 806.010 or 813.010 at the time the act or omission causing the death or injury occurred;

"(b) The death or injury resulted from acts or omissions of the defendant that constituted an intentional tort;

"(c) The defendant was engaged in conduct that would constitute a viola-tion of ORS 811.140 at the time the act or omission causing the death or injury occurred; or

"(d) The defendant was engaged in conduct that would constitute a felony at the time the act or omission causing the death or injury occurred.

"(6) The limitation on liability established by this section based on a vio-lation of ORS 806.010 does not apply if the plaintiff in the civil action was insured under a motor vehicle liability insurance policy within 180 days before the act or omission occurred, and the plaintiff has not operated a motor vehicle in violation of ORS 806.010 within the one-year period immediately preceding the date on which coverage under the motor vehicle liability insurance policy lapsed."

have been contrary to the constitutional principle. In fact, *Smothers* points out that remedies clauses were enshrined in state constitutions out of distrust for legislative power because such power could be used to enact laws in derogation of the peoples' rights to complete remedy. *Id.* at 106-07.

Second, the fact that the majority has located a few judicial decisions that did not strike down laws enacted in violation of a constitutional provision, such as a remedies clause, does not establish conclusively that the law did not violate the remedies clause. None of the cases that the majority cites as support of its narrowed view of the remedies clause includes a discussion of the remedies clause in that state's constitution.

The cases on which the majority relies prove only that some legislatures were willing to enact legislation qualifying a plaintiff's right to recover for injuries in some circumstances. Reliance on the legislation revealed in those cases, however, is not a legal construction of the Oregon remedies clause that this court should accept in deciding to narrow the protection heretofore afforded by the remedies clause under *Smothers*.

Contrary to the impression that the majority's case discussion creates, other cases from the mid-nineteenth century demonstrate that state remedies clauses were understood to protect plaintiffs from legislative deprivation of a right of recovery of the kind at stake here. *See Eastman v. County of Clackamas*, 32 Fed 24, 32 (D Or 1887) (Deady, J.) ("Can the legislature, in some spasm of novel opinion, take away every man's remedy for slander, assault and battery, or the recovery of a debt? and, if it cannot do so in such cases, why can it in this?"); *Passenger Railway Co. v. Boudrou*, 92 Pa 475 (1880) (court declared statute limiting damages to $3,000 to be unconstitutional; "limitation of recovery to a sum less than the actual damage, is palpably in conflict with the right to remedy by the due course of law"); *Davis v. Pierse*, 7 Minn 1 (1862) (court declared statute barring "all persons aiding the rebellion" from prosecuting judicial proceedings to be unconstitutional under state's remedy clause).

The legislature has the power to criminally punish or administratively sanction drivers who operate a motor

vehicle without liability insurance. However, the remedies clause prohibits the legislature from interfering with recovery for injury to absolute common-law rights respecting person, property, or reputation. *Smothers*, 332 Or at 124. *Smothers* makes it clear that plaintiff's cause of action against another driver who negligently caused plaintiff's injury is the kind of absolute common-law right that was intended to be protected by the remedies clause at the time the Oregon Constitution was drafted. I would hold that ORS 31.715, by precluding plaintiff from recovering "noneconomic damages" for the injuries she that sustained, violates the remedies clause of Article I, section 10.

For the foregoing reasons, I dissent.

Durham and Riggs, JJ., join in this dissent.